# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| TRAVELPORT LIMITED, a foreign | ) | |
| corporation, and TRAVELPORT, LP, a | ) | Civil Action No. 4:11-cv-0244-Y |
| Delaware limited partnership, d/b/a | ) | |
| TRAVELPORT; | ) | |
| | ) | |
| And | ) | |
| | ) | |
| ORBITZ WORLDWIDE, LLC, | ) | |
| a Delaware limited liability company, | ) | |
| d/b/a ORBITZ, | ) | |
| | ) | |
|     Defendants. | ) | |

## TRAVELPORT'S MEMORANDUM OF LAW IN SUPPORT
## OF ITS FRCP 12(b)3 AND 28 U.S.C. §1406(a) MOTION TO DISMISS
## OR TRANSFER AMERICAN AIRLINES' COMPLAINT

# TABLE OF CONTENTS

**Page**

I.      SUMMARY OF ARGUMENT ........................................................................... 1

II.     BACKGROUND FACTS ................................................................................. 2

III.    LEGAL AUTHORITIES ................................................................................. 3

IV.     DISCUSSION ................................................................................................ 5

      A.      The Court Should Enforce The Express Forum Selection
           Clause To Which AA Agreed ................................................................... 5

      B.      The Forum Selection Clause Applies To AA's Claims ......................... 6

      C.      The Court Should Award Travelport Its Fees and Costs Incurred
           As A Result of Having To Enforce The Venue Selection Clause ....................... 10

V.      CONCLUSION .............................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ABC Rental Systems, Inc. v. Colortyme, Inc.*, 893 F. Supp. 636 (E.D. Tex. 1995)........................ 9

*Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907 (5th Cir. 1993).................................. 4

*Bense v. Interstate Battery Sys.*, 683 F.2d 718 (2d Cir. 1982) ...................................................... 9

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991)....................................................... 4, 5

*CK DFW Partners, LTD. v. City Kitchens, Inc.*, No. 06-cv-1598, 2007 WL
    *2381529 (N.D. Tex. Aug. 17, 2007)*.......................................................................................... 4

*Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F. Supp. 2d 550 (N.D. Tex. 2009).................... 5

*Excel Marketing Solutions Inc. v. Direct Financial Solutions, LLC*, No. 11-cv-
    *0109, 2011 WL 1833022 (N.D. Tex. May 13, 2011)* ................................................................ 5

*Frietsch v. Refco, Inc.*, 56 F.3d 825 (7th Cir. 1995)....................................................................... 5

*Haynsworth v. The Corp.*, 121 F.3d 956 (5th Cir. 1997) .......................................................... 4, 6

*Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518 (5th Cir. 2001) ........................... 4

*Kessmann and Assoc., Inc. v. Barton-Aschman Assoc., Inc.*, 10 F. Supp. 2d 682
    *(S.D.Tex. 1997)*.......................................................................................................................... 6

*Laserdynamics, Inc. v. Acer America Corp.*, 209 F.R.D. 388 (S.D. Tex. 2002)............................ 4

*Lim v. Offshore Specialty Fabrication, Inc.*, 404 F.3d 898 (5th Cir. 2005) ................................. 3

*Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988)................................ 5

*Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3 216 (5th Cir. 1998)...................................... 6

*McCaskey v. Continental Airlines Inc.*, 133 F. Supp. 2d 514 (S.D. Tex. 2001)............................. 4

*Mitsui & Co. (USA) Inc. v. M/ V MIRA*, 111 F.3d 33 (5th Cir. 1997)........................................... 4

*Northview Christian Church Inc. v. Monolithic Constructors, Inc.*, No. 3:09-cv-
    *655M, 2010 WL 2605673 (N.D. Tex. June 28, 2010)* .......................................................... 10

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 41 L. Ed. 2d 270, 94 S. Ct. 2449
    *(1974)* ........................................................................................................................................ 4

*Soil Building Systems v. CMI Terex Corp.*, No. 3:04-CV-0210, 2004 WL
    *1283966*4 (N.D. Tex. June 9, 2004)* ....................................................................................... 6

*Stewart Org., Inc. v. Ricoh Corp., 810 F.2d 1066 (11th Cir. 1987)* ................................................. 9

*The Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972)* ........................................................... 4, 5

*Universal Grading v. eBay, No. 08-CV-3557, 2009 U.S. Dist. LEXIS 49841*
    *(E.D.N.Y. June 9, 2009)* ......................................................................................................... 9

*Ward Packaging, Inc. v. Schiffman, No. 4:02-CV-518-A, 2002 WL 31086077*
    *(N.D. Tex. Sep. 13, 2002)* ....................................................................................................... 9

**Statutes and Federal Rules**

*28 U.S.C. §1406(a)* ....................................................................................................... *1, 3, 5, 10*

*Fed. R. Civ. P. 12(b)3* ................................................................................................... *1, 3, 5, 10*

Defendants, Travelport Limited and Travelport, LP (hereinafter "Travelport"), by and through their undersigned attorneys, submit this memorandum of law in support of Travelport's Fed. R. Civ. P. 12(b)3 and 28 U.S.C. §1406(a) motion to dismiss or transfer.

## I.   SUMMARY OF ARGUMENT

This is the second time that AA has ignored its contractual obligations concerning where AA must file its claims against Travelport. AA previously and improperly filed a declaratory judgment action against Travelport in Texas even though the parties' contract expressly requires that all lawsuits arising out of the parties' agreement are to be filed in a state or federal court in Cook County, Illinois. TP APX 4-8, 11. AA subsequently dismissed that Texas case against Travelport, and the claims that were at issue in that case are now properly pending before the Circuit Court of Cook County. TP APX 13.

In this 12(b)(3) and §1406(a) motion, Travelport seeks to have the instant case dismissed as well (or transferred) because AA's claims arise out of the parties' contract and the contract requires that venue for any such suit is only proper in a state or federal court in Cook County, Illinois. In addition, Travelport respectfully requests that this Court award Travelport its fees and costs incurred to enforce the parties' contractual obligations and address this second improper Texas filing by AA. The payment of such fees and costs is required by the parties' contract.

There is no question that AA's action in this Court arises out of AA's contract with Travelport. By way of only one example, AA's complaint asserts that Travelport has purportedly maintained an illegal monopoly through the enforcement of a content-parity or

1

"most favored nation" ("MFN") clause *in its contract with AA*.[1]  AA's allegations identify the contract, quote the MFN clause, attack that clause as anticompetitive, and quote government regulatory filings characterizing these types of contractual clauses.  Moreover, AA claims that it incurred more than five years' worth of treble damages as a result of the MFN clause in the parties' contract, and AA seeks to enjoin enforcement of that clause in the parties' contract.  The Court should enforce the parties' forum selection clause and dismiss the complaint or transfer AA's action to the Northern District of Illinois.

## II.    <u>BACKGROUND FACTS</u>

Travelport and its affiliated Travelport entities own and operate computerized reservation systems ("CRSs") under the trademarks Galileo, Apollo and Worldspan.  CRSs, which are also known as global distribution systems ("GDSs"), enable online and offline travel agents, travel service providers, travel-related websites, and, through these subscribers, the general public to search for and/or book airline tickets, hotel rooms, rental cars, and associated products and services.

Travelport, through its predecessor in interest, Galileo International, L.L.C., entered into an agreement with AA on July 5, 2006 titled "Preferred Fares Amendment" (the "PFA") pursuant to which Travelport obtained various fare, schedule and related information from AA. The PFA amended an earlier agreement between Travelport and AA called the Galileo

---

[1] Travelport details the many other AA allegations rooting this claim in the parties' contract in Section III B, *infra*.

International Global Airline Distribution Agreement ("GIGADA") which the parties executed on

December 15, 1993.  *See* Kurt Ekert Declaration, TP APX 15.[2]

 Pursuant to the Agreement, AA and Travelport agreed to the following provision:

> 21. GOVERNING LAW
>
>  This Agreement and all disputes arising under or in connection with this Agreement, including actions in tort, shall be governed by the internal laws of the State of Illinois, without regard to its conflicts of laws principles.  **All actions brought to enforce or arising out of this Agreement shall be brought in federal or state courts located within the County of Cook, State of Illinois, USA,** the parties hereby consenting to personal jurisdiction and venue therein.

TP APX 11.

 In its Complaint, AA repeatedly makes allegations about the parties' Agreement,

including its MFN and other contract terms, as being the foundation for AA's primary claims.

However, while liberally referencing other contractual provisions, AA omits any mention of the

fact that the Agreement obligates the parties to litigate their disputes in the state or federal court

in Cook County, Illinois.  Indeed, nowhere in its complaint did AA advise this Court or

otherwise acknowledge this exclusive forum selection to which AA agreed.

## III. LEGAL AUTHORITIES

 In the Fifth Circuit, a party may seek to dismiss or transfer an action filed in an improper

venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).  *Lim v.*

*Offshore Specialty Fabrication, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005) ("our court has treated a

motion to dismiss based on a forum selection clause as properly brought under Rule 12(b)(3)

---

[2] The GIGADA and PFA are hereinafter collectively referred to as the "Agreement."

(improper venue)" citing *Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 909 & n.3 (5th Cir. 1993)); *Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 523 (5th Cir. 2001) (holding that "a transfer for improper venue comes under § 1406(a)"). The burden of sustaining venue rests with the plaintiff. *McCaskey v. Continental Airlines Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001).

Federal law controls the Court's examination concerning the enforceability of a forum selection clause. *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997); *CK DFW Partners, LTD. v. City Kitchens, Inc.*, No. 06-cv-1598, 2007 WL 2381529, *2 n.7 (N.D. Tex. Aug. 17, 2007) ("In this circuit…the proper law to apply to [forum selection clause enforcement] questions is federal, whether jurisdiction is based on diversity, a federal question, or some combination of the two.").

The United States Supreme Court has held that forum selection clauses are presumptively valid. *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 591-94 (1991); *see also Mitsui & Co. (USA) Inc. v. M/ V MIRA*, 111 F.3d 33 (5th Cir. 1997) (affirming dismissal for improper venue pursuant to a forum selection clause and stating "[t]he Supreme Court has consistently held forum-selection and choice-of-law clauses presumptively valid").

To rebut this presumption, the opposing party must demonstrate that the forum selection clause is unreasonable, the result of fraud or coercion, that the enforcement of the provision would violate a stout public policy, or that "enforcement of the clause would deprive the plaintiff of his day in court." *Bremen*, 407 U.S. at 12-13; *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14, 41 L. Ed. 2d 270, 94 S. Ct. 2449 (1974); *Laserdynamics, Inc. v. Acer America Corp.*, 209 F.R.D. 388 (S.D. Tex. 2002).

4

Moreover, the presumption of validity conferred upon forum selection clauses can only be overcome by the plaintiff's "strong showing" that enforcement would be unjust, unfair, or unreasonable under the circumstances. *See Bremen*, 407 U.S. at 10; *Carnival Cruise Lines*, 499 U.S. at 593-94; *Excel Marketing Solutions Inc. v. Direct Financial Solutions, LLC*, No. 11-cv-0109, 2011 WL 1833022, at*5 (N.D. Tex. May 13, 2011) (enforcing forum selection clause and dismissing action pursuant to 12(b)(3) and §1406(a); "The party who seeks to avoid application of a forum selection clause bears a heavy burden of proof justifying its avoidance") (internal quotation omitted).

## IV.   DISCUSSION

### A.   The Court Should Enforce The Express Forum Selection Clause To Which AA Agreed

As alleged, AA is a massive international airline with approximately 3,500 daily departures. Complaint, ¶ 16. AA is also a sophisticated company with many in-house and outside lawyers and was fully capable of negotiating and did negotiate and execute the PFA with Travelport[3]. AA has not alleged that the venue provision in the Agreement was a product of

---

[3] AA's claims against Travelport Limited and Orbitz are also subject to the forum selection clause, because both Travelport Limited and Orbitz are "closely related" to Travelport, LP. *See Frietsch v. Refco, Inc.*, 56 F.3d 825, 827 (7th Cir. 1995) ("[C]ourts in this country…enforce forum selection clauses in favor of nonparties 'closely related' to a signatory."); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir. 1988) (applying forum selection clause in favor of non-signatories). As alleged by AA, Travelport Limited is the entity that "owns, controls, or operates" the Travelport GDSs that AA has contracted to use via its agreement with Travelport, LP. Complaint, ¶ 17. Similarly, Orbitz was a wholly-owned subsidiary of Travelport until 2007, and Travelport, LP, Travelport Limited, and Orbitz are owned by a common corporate parent. Ekert Decl., TP APX 15; *see also* Orbitz's Mot. to Dismiss § III (C) (1)-(2). These entities are "closely related." *See Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F. Supp. 2d 550, 556-57 (N.D. Tex. 2009) (Means, J.) (denying reconsideration of motion to dismiss and enforcing forum selection clause in favor of a "closely

(Continued…)

fraud or coercion. *See, e.g., Haynsworth v. Lloyd's of London*, 121 F.3d 956 (5th Cir. 1997) ("Fraud and overreaching must be specific to a forum selection clause in order to invalidate it."). Indeed, as noted above, AA did not bother to mention the existence of the venue provision to the Court. Further, AA cannot reasonably assert that the venue provision violates public policy or deprives AA of its day in Court. The parties agreed to avail themselves of the courts in Cook County, Illinois to resolve their disputes, and there is no basis for AA to contend that its claims cannot be adjudicated there. To be sure, AA is currently litigating against Travelport over the Agreement in the Circuit Court of Cook County, and AA has not asserted in its Complaint that the venue provision violates public policy, is unfair, is the product of coercion, or that it prevents AA from obtaining its day in court.

### B.    The Forum Selection Clause Applies To AA's Claims

In this circuit, courts "look first to the language of the parties' contracts to determine which causes of action are governed by the forum selection clause." *Soil Building Systems v. CMI Terex Corp.*, No. 3:04-CV-0210, 2004 WL 1283966, at *4 (N.D. Tex. June 9, 2004) (enforcing forum selection clause and quoting *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3 216, 222 (5th Cir. 1998)). "Claims that arise out of the contractual relationship and implicate the agreement are subject to the forum-selection clause." *Kessmann and Assoc., Inc. v. Barton-Aschman Assoc., Inc.*, 10 F. Supp. 2d 682, 688 (S.D.Tex. 1997).

---

(Continued…)

related" affiliate that was involved in the transaction at issue and shared a common parent with the contracting party).

As set forth above, the forum selection clause at issue in this case is broad and refers to "**[a]ll actions** brought to enforce or arising out of this Agreement…."  TP APX 11 (emphasis added).  AA's complaint clearly "arises out of" the Agreement because it is replete with allegations about:  i) the Agreement generally; ii) the specific terms of the Agreement; iii) the legal claims which those specific contract terms purportedly give rise to; and iv) how AA is allegedly harmed by the Agreement and its terms.  Some examples include:

- AA unequivocally alleges that the Agreement is one of two contracts that is "relevant here."  Complaint, ¶ 18.  AA rightfully confirmed the obvious fact that the Agreement is "relevant" to AA's complaint because AA repeatedly refers to the Agreement and its specific terms in describing the genesis of AA's claims and AA's purported harm resulting from those terms.[4]

- AA alleges that "Travelport's exclusionary acts and practices include: **[i]mposing anticompetitive contract terms in their agreements with participating airlines** that severely limit the airlines' ability to develop, promote, or use competing distribution channels."  Complaint, ¶ 8.[5] (emphasis added).  As noted, one of these "agreements with participating airlines" is the admittedly "relevant" Agreement between AA and Travelport.  Moreover, by these allegations, AA confirms that Travelport's supposed "exclusionary acts and practices" are firmly rooted in the "anticompetitive contract terms" in the Agreement and others like it.  In other words, the complained of conduct arises out of the Agreement.

---

[4] According to AA, the other "relevant agreement" is the Subscriber Services Agreement ("SSA") between Orbitz and Travelport. Like the Agreement, the SSA also contains a forum selection clause requiring that all actions be brought in the state or federal court in Cook County, Illinois. TP APX 18.   While AA is not a party to the SSA, the forum selection clause in the SSA, at the least, demonstrates that co-defendant Orbitz is not adverse to litigating in Cook County (which is where Orbitz is headquartered). Also, AA chose to put the SSA at issue in this case so Travelport and Orbitz should not be deprived of their chosen forum for resolving matters arising out of that agreement.

[5] AA makes other similar allegations, including at ¶ 44 of its Complaint which provides that "Travelport has responded to these attempts to generate competition first, **by imposing contract terms** on the airlines that effectively protect the GDSs from this type of competitive discipline, and second, by retaliating against airlines that have engaged in this type of effort, including American." (Emphasis added).

- AA alleges that "If American wants to sell tickets to business travelers who rely on a travel agent that subscribes to one of Travelport's GDSs, it has no choice but to participate in that GDS or risk losing a substantial number of those ticket sales." Complaint, ¶ 35 (emphasis added). AA's participation in the Travelport GDS is governed by the Agreement. Therefore, AA is really alleging that it has supposedly been forced to enter into the Agreement and others like it. While factually untrue with respect to the Agreement, this allegation nonetheless confirms that AA's action arises out of the Agreement.

- Similar to the immediately above provision, AA alleges that "Travelport has used its monopoly power to impose anticompetitive terms and conditions on airlines that participate in Travelport's GDSs. These restrictions have the purpose and effect of foreclosing the few avenues available to the airlines to promote and encourage competition between different GDSs, as well as competition between GDSs and emerging distribution channels." Complaint, ¶ 43. (Emphasis added). AA also alleges that "The **restrictive provisions in Travelport's long-term contracts** with participating airline carriers constitute agreements in unreasonable restraint of interstate commerce in violation of Section 1 of the Sherman Act." Complaint, ¶120. (Emphasis added). Again, while manifestly false, these provisions undisputedly demonstrate that AA is complaining about the terms of the Agreement.

- AA specifically alleges that a most favored nation provisions in Section 2.1 of the Agreement is but one of the terms that gives rise to AA's claims. Complaint, ¶ 46. On this same point, alleges that "**Travelport makes widespread use of** the most-favored nation ("MFN") provisions in the form of "full content" or "content parity" provisions **in its participating carrier agreements** that limit participating airlines' ability to encourage the use of one GDS over another or the use of alternative providers of airline booking services other than GDSs." Complaint, ¶ 45.

- AA also makes allegations quoting filings from the Department of Justice and the Department of Transportation in asserting that the "MFN" provision in the Agreement is anticompetitive. *See* Complaint, ¶¶ 51, 52. Thus, these allegations are also tied to the terms of the parties' Agreement.

- AA alleges at paragraph 85 of its Complaint that Travelport "retaliates against American." The alleged retaliation was that Travelport raised AA's booking fees. AA's obligations to pay Travelport booking fees are, not surprisingly, set forth *in the parties' Agreement*. Accordingly, Travelport allegedly retaliated against AA by exercising a contractual right. This claim of retaliation therefore necessarily arises out of the Agreement.

- AA's allegations about its supposed harm arising out of the Agreement and others like it get to a remarkably granular level. Specifically, AA alleges that it is even harmed by the *termination dates* in the Agreement and other GDS agreements.

As AA alleges, "Travelport and other GDS providers have **staggered the termination dates of their agreements with participating airlines**, which maximizes their bargaining leverage against each carrier."  Complaint ¶ 49.

Given these and numerous other paragraphs in the Complaint, AA cannot reasonably argue that its action does not "arise out of" the Agreement.  Additionally, the dismissal or transfer of AA's antitrust and tort claims is proper because federal courts routinely find that non-contractual claims, including those asserting actions sounding in antitrust and tort, can fall within the scope of contractually-based forum selection clauses.  *See ABC Rental Systems, Inc. v. Colortyme, Inc.*, 893 F. Supp. 636, 637 (E.D. Tex. 1995) (enforcing forum selection clause against complaint asserting antitrust and RICO claims); *Stewart Org., Inc. v. Ricoh Corp.,* 810 F.2d 1066 (11th Cir. 1987), *aff'd*, 487 U.S. 22 (1988) (reversing district court's ruling that breach of warranty, fraud, and antitrust claims did not fall within forum selection clause); *Bense v. Interstate Battery Sys.*, 683 F.2d 718, 720 (2d Cir. 1982) (affirming district court's ruling that antitrust claims fall within scope of forum selection clause); *Universal Grading v. eBay*, No. 08-CV-3557, 2009 U.S. Dist. LEXIS 49841, at *50-52 (E.D.N.Y. June 9, 2009) (antitrust claims fall within scope of forum selection clause in user agreement); *Ward Packaging, Inc. v. Schiffman*, No. 4:02-CV-518-A, 2002 WL 31086077, at *3 (N.D. Tex. Sep. 13, 2002) (granting motion to dismiss and holding "tag-along" Texas Deceptive Trade Practices Act claims did not defeat operation of the parties' forum selection clause mandating venue in Cook or Lake County, Illinois).

In short, AA's antitrust and other claims are subject to the parties' agreed-to forum selection clause because the allegations on which they are based reveal that the claims arise out of the Agreement.  The Court should therefore dismiss this action or transfer it to the forum the parties have designated to hear such disputes, the Northern District of Illinois.

### C.   The Court Should Award Travelport Its Fees and Costs Incurred As A Result of Having To Enforce The Venue Selection Clause

Travelport is entitled to its fees and costs because the Agreement obligates AA to pay Travelport for any fees and costs incurred to enforce, among other things, the venue provision of the Agreement.  As stated in Section 20 of the GIGADA:

> **EXPENSES**
>
> [AA] shall be liable for and agrees to reimburse Galileo International for all attorneys' fees and court costs and related costs incurred by Galileo International to enforce this Agreement or to seek remedies for breach of this Agreement by [AA].

TP APX 11.

Here, Travelport has incurred fees, court costs and related costs to enforce the venue provision of the Agreement.  Accordingly, Travelport is entitled to an award of such costs and fees.  *See, e.g., Northview Christian Church Inc. v. Monolithic Constructors, Inc.*, No. 3:09-cv-655M, 2010 WL 2605673, *3-4 (N.D. Tex. June 28, 2010) (enforcing forum selection clause and awarding attorneys' fees).  In addition to being required by contract, such an award would be particularly appropriate given the unambiguous venue provision in the Agreement, the well-established Fifth Circuit precedent mandating that such clauses are honored and the fact that AA was fully aware of the venue clause and previously engaged in just this type of improper forum selection.

## V.   CONCLUSION

For the foregoing reasons, Travelport respectfully requests that the Court dismiss AA's complaint against Travelport pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. §1406(a) for improper venue, or transfer this action to the Northern District of Illinois pursuant to §1406(a), and, further, that the Court award Travelport its fees and costs incurred as a result of having to bring the instant motion to enforce the forum selection clause in the Agreement.

Dated:   May 25, 2011

Respectfully submitted,

*/s/ Walker C. Friedman*
Walker C. Friedman
Michael L. Weiner
michael.weiner@dechert.com
**DECHERT LLP**
1095 Avenue of the Americas
New York, New York 10036-6797
212.698.3608
212.698.3599(Fax)

Mike Cowie
mike.cowie@dechert.com
Craig Falls
craig.falls@dechert.com
**DECHERT LLP**
1775 I Street, NW
Washington, D.C. 20006-2401
202.261.3300
202.261.3333 (Fax)

Walker C. Friedman
State Bar No. 07472500
wcf@fsclaw.com
Christian D. Tucker
State Bar No. 00795690
tucker@fsclaw.com
**FRIEDMAN, SUDER & COOKE, P.C.**
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
817.334.0400
817.334.0401 (Fax)

John T. Schriver
JTSchriver@duanemorris.com
Paul E. Chronis
pechronis@duanemorris.com
**DUANE MORRIS LLP**
Suite 3700
190 South LaSalle Street
Chicago, Illinois 60603-3433
312.499.6700
312.499.6701 (Fax)

**ATTORNEYS FOR DEFENDANTS**

11

**TRAVELPORT LIMITED and
TRAVELPORT, LP**

### CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of May, 2011, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, Fort Worth Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Walker C. Friedman*
Walker C. Friedman