# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| American Airlines, Inc., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| Sabre, Inc., a Delaware corporation; Sabre Holdings Corporation, a Delaware corporation and Sabre Travel International Ltd., a foreign corporation, d/b/a Sabre Travel Network; | ) ) ) ) ) ) | Civil Action No.: 4:11-cv-0244-Y |
| Travelport Limited, a foreign corporation and Travelport, LP, a Delaware limited partnership, d/b/a Travelport; | ) ) ) ) | |
| and | ) ) | |
| Orbitz Worldwide, LLC, a Delaware limited liability company, d/b/a Orbitz; | ) ) ) | |
| Defendants. | ) | |

## AMERICAN AIRLINES INC.'S REPLY TO TRAVELPORT'S AND ORBITZ'S OPPOSITION TO A RULE 16(a) CONFERENCE AND RESPONSE IN OPPOSITION TO THE MOTION TO STAY DISCOVERY

## TABLE OF CONTENTS

**Page**

INTRODUCTION…………………………………………………………………………………...1

ARGUMENT…………………………………………………………………………………...4

A.   Defendants' Attempts To Disparage The Complaint Do Not Justify Either
     Delaying The Rule 16(a) Conference Or Staying Discovery……...……………………..4

B.   Defendants Have No Basis To Avoid A Prompt Rule 16(a) Conference…………...……9

C.   Defendants' Motions To Stay Discovery Should Be Denied And Discovery
     Should Proceed Expeditiously…………………………………………………...……10

   1. The Motions To Stay Should Be Denied………………………………………...10

   2. Expedited Discovery Is Warranted……………………………………………………15

CONCLUSION…………………………………………………………………………17

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) ..................................................................................................9

*Bell Atl. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................12

*Carter v. Ozoeneh*,
    No. 3:08-cv-614, 2009 WL 1383307 (W.D.N.C. May 14, 2009) ...........................17

*Christou v. Beatport, LLC*,
    No. 10-cv-02912-CMA-KMT, 2011 WL 650377 (D. Colo. Feb. 10, 2011) ....................11, 13

*Coss v. Playtex Prods. LLC*,
    No. 08 C 50222, 2009 WL 1455358 (N.D. Ill. May 21, 2009) ...............................13

*Dahl v. Bain Capital LLC*,
    No. 07-12388-EFH (D. Mass. Sept. 3, 2008) ........................................................13

*Del Vecchio v. Amazon.com*,
    No. C11-0366RSL, 2011 WL 1585623 (W.D. Wash. Apr. 27, 2011) ....................13

*Dimension Data North Am., Inc. v. NetStar-1*,
    226 F.R.D. 528 (E.D.N.C. 2005) ...........................................................................17

*Eastman Kodak Co. v. Image Technical Servs., Inc.*,
    504 U.S. 451 (1992) ...............................................................................................6, 8

*Edgenet, Inc. v. Home Depot, U.S.A., Inc.*,
    259 F.R.D. 385 (E.D. Wis. 2009) ....................................................................16, 17

*First Com. Corp. v. Public Investors, Inc.*,
    CIV. A. No. 90-3316, 1990 WL 142043 (E.D. La. Sept. 25, 1990) .......................15

*Ford Motor Co. v. U.S. Auto Club, Motoring Div., Inc.*,
    No. 3-07-CV-2182-L, 2008 WL 2038887 (N.D. Tex. Apr. 24, 2008) .............10, 13

*Glazer's Wholesale Drug Co., Inc. v. Klein Foods, Inc.*,
    No. 3-08-CV-0774-L, 2008 WL 290482 (N.D. Tex. July 23, 2008) .......................10

*Heatransfer Corp. v. Volkswagenwerk, A. G.*,
    553 F.2d 964 (5th Cir. 1977) ...................................................................................9

*In re Graphics Processing Units Antitrust Litig.*,
No. C 06-07417, 2007 WL 2127577 (N.D. Cal. July 24, 2007)...............................13

*In re Netflix Antitrust Litig.*,
506 F. Supp. 2d 308 (N.D. Cal. 2007) ...................................................................14

*In re Static Random Access Memory (SRAM) Litig.*,
580 F. Supp. 2d 896 (N.D. Cal. 2008) ..................................................................13

*Mauck v. Warner-Lambert Co.*,
No. 7:01-CV-027-R, 2001 WL 34834451 (N.D. Tex. May 7, 2001) .....................17

*McLafferty v. Deutsche Lufthansa A.G.*,
No. 08-1706, 2008 WL 4612856 (E.D. Pa. Oct. 15, 2008) ....................................13

*Momenta Pharms. Inc. v. Teva Pharms. Indus.*,
No. 10-12079-NMG, 2011 WL 673926 (D. Mass. Feb. 18, 2011) .......................17

*Null v. Easley*,
No. 4:09-CV-296-Y, 2009 WL 3853765 (N.D. Tex. Nov. 18, 2009) .....................8

*OMG Fidelity, Inc. v. Sirius Techs., Inc.*,
239 F.R.D. 300 (N.D.N.Y. 2006) ...................................................................14, 16

*PMI Photomagic, Ltd. v. Foto Fantasy, Inc.*,
No. 3-99-CV-1356-M, 2003 WL 21353921 (N.D. Tex. June 6, 2003) ..................15

*Pollo Loco, S.A. de C.V. v. El Pollo Loc, Inc.*,
344 F. Supp. 2d 986 (S.D. Tex. 2004) .............................................................16, 17

*Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*,
No. H-08-cv-857, 2008 WL 8465061 (N.D. Tex. Aug. 11, 2008) ....................11, 13

*St. Louis Group, Inc. v. Metals and Additives Corp., Inc.*,
No. L–11–22, 2011 WL 1833460 (S.D. Tex. Apr. 26, 2011).................................16

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
No. 07 Civ. 2014(SWK), 2007 WL 1121734 (S.D.N.Y. Apr. 11, 2007) ...............14

*Starr v. Sony BMG Music Entm't*,
592 F.3d 314 (2d Cir. 2010), *cert. denied,* 131 S. Ct. 901 (2011) ............................9

*Todd v. Exxon Corp.*,
275 F.3d 191 (2d Cir. 2001)....................................................................................8

*Von Drake v. Nat'l Broad. Co.*,
No. 3-04-CV-0652-R, 2004 WL 1144142 (N.D. Tex. May 20, 2004)...................11

*Williams v. New Day Farms, LLC*,
  No. 2:10-cv-0394, 2010 WL 3522397 (S.D. Ohio Sept. 7, 2010)...........................................14

## OTHER AUTHORITIES

69 Fed. Reg. 976 (Jan. 4, 2004) ................................................................................................6, 7

Fed. R. Civ. P. 16(a) ......................................................................................................... *passim*

Fed. R. Civ. P. 26(f) ......................................................................................................... *passim*

Fed. R. Civ. P. 34(b)(2)(A) .............................................................................................……15

Advisory Committee Notes to 1993 Amendment to Fed. R. Civ. P. 26(d) ...................................16

Reply Comments of the Department of Justice to Notice of Proposed Rulemaking
  Computer Reservation System Regulations (June 9, 2003)........................................................7

Mary Schlangenstein, *Justice Department Opens Probe of Airline Fare Distributors*
  BLOOMBERG, May 20, 2011 ....................................................................................................7

American Airlines, Inc. ("American") respectfully files this Reply to Travelport's and Orbitz's Opposition to a Rule 16(a) Conference and Response in Opposition to the Motion to Stay Discovery.

## INTRODUCTION

American filed this case on April 12, 2011.  From the outset, American has told Travelport and Orbitz that it believed it was important to proceed with this litigation expeditiously because American may be forced to seek preliminary injunctive relief as early as August, when amendments to certain distribution agreements with Travelport and Sabre, a newly added defendant, begin to expire, and American wanted to ensure that the Court would have a full record on which to decide that motion.

American believes that such an application is likely to be necessary because: 1) Travelport has a history of taking punitive and retaliatory action against American (and the same is true of Sabre, who was previously enjoined earlier this year by a Texas state court from engaging in such conduct); and 2) both Travelport and Sabre (collectively the "GDS Defendants") have refused to provide American with reasonable assurance that they will not take punitive action this summer which would cause American and the traveling public to suffer irreparable harm.  Accordingly, from the beginning of this case, American has proposed a number of measures designed to create a consensual, orderly, efficient, expeditious and fair process that takes into account the seriousness of American's claims, the realities of the litigation process, and the burdens imposed on the defendants, particularly in light of the surrounding litigation and government investigation.  More specifically, American has provided the defendants with a description of relevant documents, a draft protective order—which mirrors one

already in use in contract litigation in Illinois brought by Travelport against American—and a request for a Rule 26(f) conference.

In response, the defendants have either ignored or rejected nearly all of these overtures and have instead looked for every opportunity to delay this case. The defendants seem intent on pursuing a strategy of delay based on the demonstrably false assumption that there is no need to move this case along, and on the hope that they can gain a strategic advantage in defending any future preliminary injunction motion on an incomplete record. To that end, the defendants have refused to hold a Rule 26(f) conference, taken weeks to provide comments on a draft protective order that was modeled on one already agreed to between Travelport and American in another litigation, and now moved to stay discovery.[1] Two recent events in particular have made it especially important to hold the conference and proceed with discovery promptly. First, Travelport has filed a meritless motion to transfer venue, making it essential for this Court to resolve promptly where this case will be litigated. That issue will soon have been fully briefed, as American responded to the motion to transfer in advance of the customary twenty-one days. At the requested conference, the Court and the parties can: 1) discuss whether Travelport intends to continue to pursue its motion, particularly given Sabre's intervention and inclusion as a defendant in this case; and 2) if so, set a schedule for resolving this threshold issue as expeditiously as possible. Second, since the commencement of this lawsuit the Department of Justice ("DOJ")—which has long believed that the global distribution system ("GDS") industry is characterized by GDS market power—has served the GDS Defendants and other interested

---

[1] Orbitz did not file a formal motion to stay discovery, but it also seeks that relief in its opposition to American's request for a Rule 16(a) Conference. (Defendant Orbitz Worldwide, LLC's Response to Plaintiff American Airlines' Request for Rule 16(a) Conference [Docket No. 42] ("Orbitz Mem.") at 3.) Accordingly, American refers herein to "defendants' motions" to stay discovery. If the Court treats Orbitz's request as a formal motion, American respectfully requests that the Court also treat this memorandum as its response in opposition thereto.

parties, including American, with Civil Investigative Demands ("CIDs") as part of an ongoing government investigation into GDS practices.  That investigation not only rebuts the defendants' characterization of American's claims as based on ancient history, but it also is directly relevant to any claim by the GDS Defendants of undue burden, since both the DOJ investigation and the CIDs address the same issues as American's antitrust claims.  Consequently, Travelport and Sabre will soon be producing to the DOJ largely the same documents that American will be requesting.

The defendants' other arguments are equally groundless.  While they claim that American has not yet provided them with focused discovery requests, American is prepared to discuss that subject with them at the conference that the defendants refuse to hold.  American has already provided a description of potentially relevant documents, and we are anxious to have a discussion with the defendants (and, if necessary, the Court) regarding what is reasonable under the circumstances.  The defendants, however, have refused to take even that first step.

Although the defendants complain that American has not specified the basis for the preliminary injunction motion that it may be forced to file, American has not done so because it does not yet know the precise punitive actions that Travelport (and Sabre) will take.  What American does know is that: 1) both Travelport and Sabre have histories—within the past year—of taking draconian actions that inflicted irreparable harm on American to punish American for pursuing competitive options for the distribution of its product (*see* First Amended Complaint (the "Complaint" or "Compl.") ¶¶ 96-109); 2) both Travelport and Sabre have refused to provide American with reasonable assurance that they will not take the kind of punitive actions that they have taken in the recent past; and 3) American and the Court will lack the adequate record necessary to respectively file and decide a preliminary injunction motion if discovery does not

commence until August, at a time when American is simultaneously learning the full scope of the GDS Defendants' actions against it.

Currently, American is protected from some of the most egregious forms of retaliation by contractual amendments set to expire as early as August 1, when the first of two Travelport amendments expires. The Sabre amendment and second Travelport amendment both expire one month later. In January, American was able to obtain injunctive relief in the Texas State Court against Sabre's punitive actions against American based on the parties' contract. As these contracts expire beginning in August, American will likely have to rely on enforcement of the antitrust laws to prevent severe punitive actions and irreparable harm. The defendants are well aware of these impending dates, and thus have every incentive to ensure that American does not have access to relevant documents or a complete record as events unfold over the next several months. We respectfully submit that the Court should not permit that to happen. Instead, the defendants' stay motions should be denied and a Rule 16(a) conference should be convened at the Court's earliest convenience.

## ARGUMENT

### A. Defendants' Attempts To Disparage The Complaint Do Not Justify Either Delaying The Rule 16(a) Conference Or Staying Discovery

As a threshold matter, much of the defendants' oppositions to American's request for an early status conference with the Court, as well as their motions to stay discovery, are based on their inaccurate characterizations of American's Complaint. For example, Travelport asserts that American's "entire Complaint skates on thin ice" and that this is "not a genuine antitrust action." (Travelport's Opposition to Request for Rule 16 Conference and Memorandum in Support of Motion to Stay Discovery Pending a Decision on the Rule 12(b)(6) and 12(b)(3) Motions [Docket No. 47] ("TP Mem.") at 1, 5.) The defendants also claim that their Rule 12(b)(6)

motions to dismiss this case have rendered an expedited Rule 16(a) conference and discovery unnecessary.  (*See, e.g.*, *id.* at 1-2 (stating that "a Rule 16(a) conference is premature" because motions to dismiss have been filed that "would knock out the entirety of [American's] Complaint").)  These attacks on American's Complaint are merely empty rhetoric.  American will respond to the motions to dismiss in the next few days, and without seeking any extension of time, but to the extent relevant to the defendants' motions to stay, we will briefly respond to their principal contentions, solely to show that they provide no basis for either the motions to stay or the defendants' opposition to a simple Rule 16(a) conference.

American's Complaint asserts that the Travelport and Sabre GDSs and the travel agents they have co-opted, including defendant Orbitz, have engaged in a long-running and broad based series of unlawful actions, all designed to prevent competition in GDS services and all in violation of the antitrust laws.  More specifically, the Complaint sets forth, in detail, *facts* showing that the defendants' conduct was intended to, and has successfully, stifled competition and prevented American from distributing its flight and fare content information to travel agents using an alternative channel of distribution—called AA Direct Connect—based on modern and less costly technology than the GDSs offer.  (*See* Compl. ¶¶ 49-111).

The defendants proclaim that this Court should permit them to continue to delay this case because American's claims supposedly are legally groundless and based on a false description of the structure of the industry.  These, of course, are hardly proper findings that can be made on the basis of a motion to stay discovery.  Regardless, however, of how the defendants choose to describe American's Complaint, American's allegations are entirely consistent with findings by both the DOJ and the Department of Transportation ("DOT")—findings that the DOJ believes continue to have enough merit to justify an intensive investigation.  For example, consistent with

the product market alleged by American, the DOJ concluded in 1996 and again in 2003 that the

GDSs have *market power* over the airlines, like American: "Each [GDS] provides access to a

large, discrete group of travel agents, and unless a carrier is willing to forego access to those

travel agents, it must participate in every [GDS]. Thus, *from an airline's perspective, each*

*[GDS] constitutes a separate market and each system possesses market power* over any carrier

that wants travel agents subscribing to that [GDS] to sell its airline tickets." (*Id.* ¶ 43 (emphasis

added).)[2]

Similarly, while the defendants disagree with American's allegations that they have

engaged in anticompetitive conduct that has caused harm to competition, the DOT concluded in

2004 that "[GDS] fees *exceed competitive levels* . . . . We have not seen evidence that the

[GDS's] fees generally respond to market forces . . . ." (*Id.* ¶ 45.) Consistent with that finding,

American alleges that Travelport and Sabre charge "excessive booking fees" that have increased

over the last decade despite declining or flat costs, and that "were it not for the anticompetitive

conduct of defendants and other industry participants, it could distribute tickets using AA Direct

Connect at an average cost of less than half what it currently pays for bookings made through a

GDS." (*Id.* ¶¶ 46-47.)

American's Complaint also sets forth the *uncontested fact* that Travelport and Sabre have

engaged in display bias—a practice repeatedly condemned by the DOT and DOJ by which GDSs

present a deliberately misleading display of airline, flight, fare and availability information—in

---

[2] *See also* DOT Computer Reservations System (CRS) Regulations, 69 Fed. Reg. 976, 988 (Jan. 4, 2004) ("[A]irlines wishing to electronically provide information and booking capabilities to travel agencies currently have no effective substitute for participation in each [GDS]. . . . Each [GDS] is a separate market insofar as the airlines are concerned."). Thus, Travelport's assertion (*see* TP Mem. at 5) that a "single-brand product market" is the exception, not the rule, in antitrust law ignores regulatory findings concerning the proper relevant market *in this industry*. Moreover, the DOJ would have been well aware of the "governing Supreme Court decision in this area"—presumably *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992)—when it made its findings years after that decision was issued.

retaliation for American's pursuit of AA Direct Connect and its threat to the GDS monopolies. (*Id.* ¶¶ 96-100, 104-09.)  It is well-established that such display bias is harmful to airline competition and consumers,[3] and, in fact, Sabre represented to regulators as early as 2003 that it would not engage in this anticompetitive practice.  (*Id.* ¶ 108.)

Moreover, the defendants' own actions put the lie to their claims that American's antitrust claims are based on antiquated history that no longer reflects the structure of the industry.  The Complaint sets forth the *uncontested fact* that Travelport and Sabre *doubled* American's booking fees less than a year ago in retaliation for American's AA Direct Connect initiative.  (*Id.* ¶¶ 96, 103.)  It is difficult to imagine a clearer demonstration of monopoly power than the ability of a firm to increase prices by 100% without fear that its customer will be able to take its business elsewhere.  And indeed, the DOJ's ongoing investigation reflects that American's antitrust claims are based on the current structure of the GDS industry and the conduct of the defendants.  Consistent with its repeatedly-stated concerns regarding the GDSs' conduct, the DOJ recently launched what appears to be a major investigation of the GDSs' conduct.  Both Travelport and Sabre, along with other industry participants, including American, have acknowledged receiving CIDs from the DOJ,[4] and according to DOJ policy, CIDs are issued when "there is reason to believe that any violation within [DOJ's] scope of authority has

---

[3] *See, e.g.*, DOT Computer Reservations System (CRS) Regulations, 69 Fed. Reg. 976, 992 (Jan. 4, 2004) ("Our rules have prohibited [GDSs] from biasing their displays in order to prevent unfair methods of competition and deceptive practices.  Display bias both prejudices airline competition, by reducing the airlines' ability to compete on the basis of the relative attractiveness of their schedules and fares, and causes travel agents to give misleading information or incomplete advice to their customers."); Reply Comments of the Department of Justice, at 19-20 (June 9, 2003) ("Experience shows that bias is easy to implement and effective in limiting competition.") (App. at 2-3 (Ex. 1).)

[4] *See* Mary Schlangenstein, *Justice Department Opens Probe of Airline Fare Distributors*, BLOOMBERG, May 20, 2011 ("The U.S. Justice Department is investigating possible antitrust violations by companies that distribute airline fare and flight data as they spar with carriers over control of the information.  Sabre Holdings Corp., of Southlake, Texas, and Atlanta-based Travelport Ltd. said today they were asked by the agency for information.") (App. at 5 (Ex. 2)).

occurred."  Dept. of Justice Antitrust Division Manual, Ch. III at 47-48 (4th ed. 2008) (App. at 8-9 (Ex. 3)) (internal quotations and citations omitted).  Further, "[a] decision to issue CIDs . . . should be made only after serious consideration and a thoughtful reassessment of the matter's potential significance."  (*Id.* at 48 (App. at 9 (Ex. 3)).)

Even aside from the DOJ investigation, the defendants' contention that nothing in this case—even a preliminary conference—should proceed, merely because they have filed motions to dismiss, is groundless.  It is well-settled that "[a] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."  *Null v. Easley*, No. 4:09-CV-296-Y, 2009 WL 3853765, at *2 (N.D. Tex. Nov. 18, 2009) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)).  And, the defendants' motions are particularly suspect.  Travelport admits, for example, that "[t]he primary focus of [Travelport's] motion is the implausibility of [American's] alleged product market."  (TP Mem. at 3.)  It is black letter law, however, that the relevant market is a question of fact that is *not* proper for resolution at the motion to dismiss stage.  *See, e.g.*, *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 482 (1992) ("The proper market definition in this case can be determined only after a factual inquiry into the 'commercial realities' faced by consumers."); *Heatransfer Corp. v. Volkswagenwerk, A. G.*, 553 F.2d 964, 980 (5th Cir. 1977) ("Relevant market is essentially a question of fact . . . ."); *see also Todd v. Exxon Corp.*, 275 F.3d 191, 199 (2d Cir. 2001) (noting that "market definition is a deeply fact-intensive inquiry") (Sotomayor, J.).  Moreover, as discussed above, American's well-pled relevant product market definitions are plainly plausible given that they mirror the stated views of the DOT and DOJ.[5]

---

[5] In its motion to dismiss, Orbitz argues that it is immune from scrutiny under the antitrust laws because, as a matter of law, it cannot conspire with Travelport since they are members of the same corporate family.  (Defendant Orbitz Worldwide, LLC's Motion to Dismiss Plaintiff's Complaint at 2.)  Orbitz's defense is not supported by applicable case law and is premature before any discovery has taken place on

Indeed, the formal civil antitrust investigation by DOJ—the existence of which the defendants conspicuously fail to disclose in their motions to stay discovery—further confirms that this antitrust action satisfies the relevant pleading standards. *See Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 324 (2d Cir. 2010) (reversing grant of motion to dismiss where, *inter alia*, civil antitrust investigations of the challenged conduct rendered the alleged antitrust conspiracy plausible), *cert. denied,* 131 S. Ct. 901 (2011); *cf. Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

## B.      Defendants Have No Basis To Avoid A Prompt Rule 16(a) Conference

The defendants also oppose American's request for a prompt Rule 16(a) conference based on the contention that American has not yet filed a preliminary injunction motion.  (TP Mem. at 8-10; Orbitz Mem. at 2-3.)  Relatedly, Travelport asserts that the grounds of such a motion are unclear and, thus, a prompt Rule 16(a) conference is unnecessary.  (TP Mem. at 10-13.)  These arguments are plainly meritless for the following reasons:

- The defendants cannot possibly suffer any prejudice if the Court holds a preliminary Rule 16(a) conference to ensure that this litigation proceeds in an orderly and efficient manner—including to obtain a prompt resolution of the threshold venue issue Travelport has raised.  Indeed, the only "prejudice" to the defendants is that such a conference would be detrimental to their delay strategy.

- Based on the history detailed in the Complaint (*see* ¶¶ 88-111), American has a very reasonable basis for fearing that, just as in the recent past, the GDS Defendants will once again take draconian punitive action against American when the contract amendments begin to expire in August.

---

this subject.  Orbitz also claims that its agreements with Travelport do not foreclose a "substantial share" (i.e., more than 30%) of any allegedly relevant market to AA Direct Connect.  (*Id.* at 1-2.)  Orbitz's motion mischaracterizes the broad nature of American's antitrust claims between Travelport and its travel agency subscribers, including Orbitz.  In any event, the *cumulative* share of both the relevant market and sub-market allegedly foreclosed by Travelport's travel agency subscriber agreements is over 30% and virtually 100%, respectively, which is sufficient to state a claim.  (Compl. ¶¶ 3-4.)

- American is not currently in a position to predict what form the GDS Defendants' retaliatory conduct will take this time, since they have refused to disclose their intentions—or to provide American with reasonable assurance that they will not once again take punitive action against American when the contract amendments expire.

- American recently made a specific showing of irreparable harm and obtained a temporary restraining order from a Texas state court preventing Sabre from biasing American's flights on its GDS.[6]  Obviously, if either GDS Defendant excluded American from its GDSs entirely, American's irreparable injury would be even more severe.

- Under these circumstances, the defendants should not be heard to complain that American's request to proceed expeditiously is unjustified, particularly because if American does not receive discovery until August when it is simultaneously discovering what actions the defendants intend to undertake, American and the Court would be forced to proceed on important questions of fact and law critical to American's preliminary injunction motion based on an incomplete record. Indeed, that is precisely the result that the defendants hope to achieve by adopting a strategy to slow down the development of this case.

Accordingly, the defendants fail to provide any legitimate basis to oppose a prompt Rule 16(a) conference and, indeed, one should be held as soon as possible.

**C.     The Motions To Stay Discovery Should Be Denied And Discovery Should Proceed Expeditiously**

**1.     The Motions To Stay Should Be Denied**

Under the Federal Rules of Civil Procedure, a "stay is the exception rather than the rule" when a motion to dismiss has been filed. *Ford Motor Co. v. U.S. Auto Club, Motoring Div., Inc.*, No. 3-07-CV-2182-L, 2008 WL 2038887, at *1 (N.D. Tex. Apr. 24, 2008) ("'[H]ad the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect.'").  A stay may only be granted "for good cause shown," and not "merely because [the] defendant believes it will prevail on its motion to

---

[6] The order of the Texas state court finding that American would suffer irreparable harm if a temporary restraining order did not issue is set forth in the Appendix at Exhibit 4.  Notably, the temporary restraining order in Texas was issued in a breach of contract action and Sabre contends that the underlying contracts will expire in August.

dismiss." *Glazer's Wholesale Drug Co., Inc. v. Klein Foods, Inc.*, No. 3-08-CV-0774-L, 2008 WL 290482, at *1 (N.D. Tex. July 23, 2008); *see also Christou v. Beatport, LLC*, No. 10-cv-02912-CMA-KMT, 2011 WL 650377, at *1 (D. Colo. Feb. 10, 2011) ("The underlying principle in a determination of whether to grant or deny a stay clearly is that '[t]he right to proceed in court should not be denied except under the most extreme circumstances.'").

Among the factors considered in deciding whether to stay discovery are: "1) the breadth of discovery sought; 2) the burden of responding to such discovery; and 3) the strength of the dispositive motion filed by the party seeking a stay." *Von Drake v. Nat'l Broad. Co.,* No. 3-04-CV-0652-R, 2004 WL 1144142 at *1 (N.D. Tex. May 20, 2004). Notably, not all courts consider the third factor, particularly where, as here, briefing on the Rule 12(b)(6) motions is not complete, so as not "to make a premature pronouncement on [the] merits" of the motions. *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, No. H-08-cv-857, 2008 WL 8465061, at *1 (N.D. Tex. Aug. 11, 2008). In any event, the defendants' motions to dismiss do not justify a stay for the reasons stated above (*supra* pp. 4-9), and this factor weighs against the defendants' motions to stay discovery.

With regard to the first and second factors concerning the scope of discovery and burden to the producing party, proceeding with discovery in this action will not unduly prejudice the defendants. Travelport has already produced—or is preparing to produce—highly relevant documents in response to both: 1) discovery requests issued months ago in pending contract litigation brought by Travelport; and 2) the DOJ's CID. In other words, Travelport is already engaged in discovery and either has provided or must very soon provide many of the same documents that American will seek in discovery in this case. Sabre likewise must produce similarly relevant documents in response to both: 1) the DOJ's CID; and 2) American's

document requests propounded months ago in the pending Texas state court action.  And, it is inevitable that Orbitz will be subject to discovery in these other proceedings that also will be relevant here.

As for the defendants' complaint that discovery should not proceed because American has not yet provided them with specific or focused discovery requests, the short answer is that, as the defendants well know, American has not been permitted to serve such requests until after the Rule 26(f) conference—which the defendants have therefore refused to hold.  Moreover, one of the principal purposes of such a conference would be to enable the parties to discuss how discovery requests can be framed so as to permit discovery to proceed in an orderly and expeditious manner.  In any event, in light of the defendants' contentions, American has now provided the GDS Defendants with a letter setting forth specific and carefully targeted categories of documents that American would be prepared to accept for purposes of expedited discovery in connection with the preliminary injunction motion that it may be forced to file.  (June 10, 2011 letter from R. Rothman to W. Friedman, et al. (App. at 14-15 (Ex. 5).)

Finally, the defendants' only remaining argument—that a discovery stay is warranted because this is an antitrust case—is plainly incorrect.  There is no "'automatic, blanket prohibition on any and all discovery before an antitrust plaintiff's complaint survives a motion to dismiss.'"  (TP Mem. at 6) (noting that *Bell Atl. v. Twombly*, 550 U.S. 544 (2007) did not erect such a prohibition).  To the contrary, the Supreme Court in *Twombly* was concerned with weeding out "fishing expeditions" and other groundless claims prior to embarking on discovery.

The objective circumstances of this case are decidedly different and weigh heavily against a stay of discovery.  Indeed, the DOJ's investigation, which covers the *same* conduct that American details in its Complaint, is sufficient standing alone to show that a stay is not

warranted in this case.  In similar circumstances post-*Twombly*, courts have either denied stays outright or required the production of discovery in the parallel government investigation.  *See, e.g.*, *Christou*, 2011 WL 650377 (denying stay of discovery in case alleging violations of Section 1 and 2 of the Sherman Act where, *inter alia*, the public interest weighed against a stay because the alleged antitrust violations were ongoing); *Dahl v. Bain Capital LLC*, No. 07-12388-EFH, at ¶ H (D. Mass. Sept. 3, 2008) ("Defendants are to provide Plaintiffs with . . . disclosures made to the Department of Justice that are specifically alleged in the Complaint.") (App. at 18 (Ex. 6)); *In re Static Random Access Memory (SRAM) Litig.*, 580 F. Supp. 2d 896, 899 (N.D. Cal. 2008) (allowing limited discovery; ordering defendants to produce what they had produced to the grand jury and certain transactional data).[7]  Indeed, even in *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007), which Travelport cites (*see* TP Mem. at 7 n.1), the court authorized limited discovery on a complaint that was dismissed with leave to amend.

Courts deciding whether to stay discovery pending the outcome of a motion to dismiss also consider whether a stay would unduly prejudice the opposing party.  *See Del Vecchio v. Amazon.com*, No. C11-0366RSL, 2011 WL 1585623, at *1 (W.D. Wash. Apr. 27, 2011)

---

[7] The cases relied upon by Travelport are inapposite because the plaintiffs in those cases, unlike American, had no need for expedited discovery. *See McLafferty v. Deutsche Lufthansa A.G.*, No. 08-1706, 2008 WL 4612856, at *2 (E.D. Pa. Oct. 15, 2008) ("The delay experienced by Plaintiffs occasioned by a stay of discovery pending its resolution will do little to prejudice Plaintiffs at this point in the proceedings . . . ."); *Rio Grande Royalty Co.*, 1008 WL 8465061, at *1 (S.D. Tex. Aug. 11, 2008) ("Plaintiff concedes that it does not need this discovery to respond to the pending Motion to Dismiss"); *In re Graphics Processing Units Antitrust Litig.*, No. C 06-07417, 2007 WL 2127577, at *4 (N.D. Cal. July 24, 2007) ("The leisurely briefing schedule on the motions to dismiss was recommended by both sides-neither side should now try to capitalize on that schedule to advance or to delay discovery."). Travelport's cases further confirm that discovery stays pending resolution of a motion to dismiss are the exception, not the rule, including in antitrust cases. *See Coss v. Playtex Prods. LLC*, No. 08 C 50222, 2009 WL 1455358, at *1 (N.D. Ill. May 21, 2009) ("[T]his court disfavors [stays of discovery] because they bring resolution of the dispute to a standstill."); *Ford Motor Co.*, 2008 WL 2038887, at *1 ("While discovery may be stayed pending the outcome of a motion to dismiss, 'the issuance of a stay is by no means automatic.'  In fact, such a stay is the exception rather than the rule.") (internal citations omitted); *Graphics Processing*, 2007 WL 2127577, at *4 ("This order does not read *Twombly* to erect an automatic, blanket prohibition on any and all discovery before an antitrust plaintiff's complaint survives a motion to dismiss.").

(denying stay of discovery where "plaintiffs [(the party opposing the stay)] could suffer prejudice by a potentially lengthy discovery stay, in part because they seek to enjoin on-going allegedly wrongful conduct"); *Williams v. New Day Farms, LLC*, No. 2:10-cv-0394, 2010 WL 3522397, at *3 (S.D. Ohio Sept. 7, 2010) (denying stay of discovery where "potential prejudice to plaintiffs [(the party opposing the stay)] and the delay of the case outweigh[ed] the defendants' arguments in favor of a stay[,]" and noting that "the pendency of a potentially dispositive motion as to which the parties have presented substantial arguments on both sides, is simply not sufficient to warrant a complete stay of discovery").

Indeed, courts have specifically recognized that discovery should not be stayed where, as here, a party is likely to seek preliminary relief and thus would be prejudiced if discovery were to be delayed. *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 07 Civ. 2014(SWK), 2007 WL 1121734, at *3 (S.D.N.Y. Apr. 11, 2007) (denying a discovery stay where plaintiff anticipated filing a motion for preliminary injunction because "[i]f discovery is stayed until the defendants' motion to dismiss . . . has been resolved, the plaintiff may effectively be denied access to the remedy of injunctive relief, even though it may prevail on the motion to dismiss[,]" and stating that "granting a discovery stay pending disposition of a merely 'arguable' motion to dismiss when there is a demonstrated need for exigent relief completely undermines the purpose of temporary remedies"); *OMG Fidelity, Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 305 (N.D.N.Y. 2006) (denying stay of discovery in part because "given that plaintiff contemplates a motion for a preliminary injunction, . . . it is clear that plaintiff will potentially be unfairly prejudiced should [discovery be stayed] since [plaintiff] will not have an early opportunity to develop evidence for use in support of such a motion."). In this case, a stay plainly would prejudice American because immediate discovery is necessary to enable American

14

to prepare, and for the Court to decide, a motion for a preliminary injunction in light of the impending expiration of the distribution agreement amendments with Sabre and Travelport beginning in August.

### 2.      Expedited Discovery Is Warranted

Under the circumstances of this case, targeted expedited discovery in which the time to respond to discovery requests is shortened will enable American to seek preliminary injunctive relief, and enable the Court to decide the motion on an adequate record, in time to avert, or at least curtail, irreparable injury to its business and the traveling public.  If discovery is not expedited, documents will not be produced until August, at the earliest.  That is simply too late given the imminence of the contract expirations beginning in August, the GDS Defendants' history of punitive conduct and their refusal to provide assurance that they will not once again resort to such tactics, and the irreparable harm that will ensue if injunctive relief is unduly delayed.

In view of the targeted discovery sought, American's compelling need for it, and the lack of cognizable prejudice to the defendants, American's request to expedite discovery after the Rule 26(f) conference (which must be held before the Rule 16(a) conference) is warranted.  This Court has ample discretion to reduce the 30-day response time for responding to document requests.  *See* Rule 34(b)(2)(A) ("The party to whom the request is directed must respond . . . within 30 days . . . .  A shorter . . .  time may be . . . ordered by the court."); *PMI Photomagic, Ltd. v. Foto Fantasy, Inc.*, No. 3-99-CV-1356-M, 2003 WL 21353921, at *1 (N.D. Tex. June 6, 2003) (stating that "there can be no doubt about the court's authority" to shorten the time period set in Rule 34).[8]

---

[8] *See also First Com. Corp. v. Public Investors, Inc.*, CIV. A. No. 90-3316, 1990 WL 142043, at *1 (E.D. La. Sept. 25, 1990) ("It is clear from this language that the rules intend to vest discretion in the Court to

Even if expedited discovery were being sought before the Rule 26(f) conference (which is not the case here), American would meet the standard adopted by the majority of district courts, including several courts in the Fifth Circuit, in that situation, which utilize the good cause standard to determine whether expedited discovery is appropriate. *St. Louis Group, Inc. v. Metals and Additives Corp., Inc.*, No. L–11–22, 2011 WL 1833460, at *2-3 (S.D. Tex. Apr. 26, 2011) (collecting cases).[9]  "In a good cause analysis, a court must examine the discovery request on the entirety of the record to date and the ***reasonableness*** of the request in light of all the surrounding circumstances.  Good cause may be found where the need for expedited discovery in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.*  (emphasis in the original) (citations and internal quotations omitted).  As demonstrated in American's initial request, and as Travelport failed to address, expedited discovery in aid of a preliminary injunction motion has been found to be particularly appropriate. *See OMG Fidelity, Inc.*, 239 F.R.D. at 305 (permitting expedited discovery "with an eye toward developing information to support a contemplated motion for a preliminary injunction"); *cf.* Fed. R. Civ. P. 26(d) 1993 Amendment Advisory Committee Note (stating that expedited discovery "will be appropriate in some cases, such as those involving requests for a preliminary injunction").[10]

---

extend or shorten the time for production of documents."); *Sara Lee Corp. v. Sycamore Family Bakery Inc.*, No. 3-99-CV-1356-M, 2003 WL 21353921, at *1 (D. Utah June 22, 2009) (citing Rules 26 and 34 and stating that "the procedural rules allow the court to grant discovery based upon good cause shown without an actual pending motion for preliminary injunction" and that "Plaintiff's approach in requesting expedited discovery . . . [was] reasonable and an effort to promote judicial economy").

[9] Travelport's reliance on cases outside the Fifth Circuit to impose a heightened preliminary injunction-type standard where a party is seeking expedited discovery in aid of such a motion (*see* TP Mem. at 8 (citing *Edgenet, Inc. v. Home Depot, U.S.A., Inc.*, 259 F.R.D. 385, 387 (E.D. Wis. 2009)), is circular and well-recognized as the "minority" view here and elsewhere. *St. Louis Group*, 2011 WL 1833460, at *3 (stating that "the Court notes that other courts have criticized a preliminary-injunction-type analysis") (collecting cases).

[10] Indeed, in the only case from the Fifth Circuit cited by Travelport (*see* TP Mem. at 9 (citing *Pollo Loco, S.A. de C.V. v. El Pollo Loc, Inc.*, 344 F. Supp. 2d 986, 991 (S.D. Tex. 2004)), the court applied the "good

Moreover, the authorities cited by Travelport to oppose expedited discovery are readily distinguishable, including because they involved requests for expedited discovery prior to the Rule 26(f) and 16(a) conferences and the courts required a showing of irreparable harm, which is not the applicable test here.  Thus, the plaintiffs in those cases sought expedited discovery before the Rule 26(f) and Rule 16(a) conferences and in circuits where, unlike the Fifth Circuit, a showing of irreparable harm was required.[11]  Finally, Travelport also relies on *Pollo Loco*, 344 F. Supp. 2d at 991, but in that case the plaintiff likewise sought expedited discovery prior to the Rule 26(f) and Rule 16(a) conference.[12]

## CONCLUSION

American respectfully requests that the Court convene a Rule 16(a) conference as soon as its schedule permits and that the Court deny the motions to stay discovery.  American also requests any other and further relief to which it may be justly entitled.

---

cause" standard and stated that "[e]xpedited discovery would be appropriate in cases involving preliminary injunctions . . . ."  The court in that case declined to expedite discovery because, unlike American, the plaintiff could not show "good cause" where the discovery sought was going to be used, in part, for a foreign legal proceeding.

[11] *See Edgenet, Inc.*, 259 F.R.D. at 387, *Dimension Data North Am., Inc. v. NetStar-1*, 226 F.R.D. 528, 531-32 (E.D.N.C. 2005), *Momenta Pharms. Inc. v. Teva Pharms. Indus.*, No. 10-12079-NMG, 2011 WL 673926, at *1 (D. Mass. Feb. 18, 2011); *Carter v. Ozoeneh*, No. 3:08-cv-614, 2009 WL 1383307, at *3 (W.D.N.C. May 14, 2009).  The facts of these cases further demonstrate their inapplicability.  For example, in *Momenta*, the defendant, unlike Travelport, was willing to engage in mutual, limited, expedited discovery and the plaintiff refused.  2011 WL 673926, at *2.  And, in *Edgenet*, the harm complained of as the purported basis for the expedited discovery was conduct that had *already taken place*.  259 F.R.D. at 387.

[12] Nor should the pending venue motion, which is meritless for the reasons set forth in American's recently filed opposition brief, delay expedited discovery. *See, e.g., Mauck v. Warner-Lambert Co.*, No. 7:01-CV-027-R, 2001 WL 34834451, at *2 (N.D. Tex. May 7, 2001) (granting motion for expedited ruling on remand motion despite defendants' request for a stay: "[t]he pendency of [a] transfer order does not in any way defeat or limit the authority of this Court to rule upon matters properly presented to it for decision") (internal quotations omitted).

Dated:  June 10, 2011

Respectfully submitted,

/s/ Michelle Hartmann
Michelle Hartmann

R. Paul Yetter
State Bar No. 22154200
pyettr@yettercoleman.com
Anna Rotman
State Bar No. 24046761
arotman@yettercoleman.com
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010
713.632.8000
713.632.8002 (fax)

Richard A. Rothman
Richard.rothman@weil.com
James W. Quinn
james.quinn@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
212.310.8426
212.310.8285 (fax)

Michelle Hartmann
State Bar No. 24032401
michelle.hartmann@weil.com
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201-6950
214.746.7700
214.746.7777 (fax)

M.J. Moltenbrey
mmoltenbrey@dl.com
DEWEY & LEBOEUF LLP
1101 New York Avenue, N.W.
Washington, D.C. 20005
202.346.8738
202.346.8102 (fax)

Bill F. Bogle
State Bar No. 025661000
bbogle@hfblaw.com
Roland K. Johnson
State Bar No. 00000084
rolandjohnson@hfblaw.com
HARRIS, FINLEY & BOGLE, P.C.
777 Main Street, Suite 3600
Fort Worth, Texas 76102
817.870.8700
817.332.6121 (fax)

*Attorneys for Plaintiff American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system pursuant to the Court's Local Rule 5.1(d) this 10th day of June, 2011.

/s/ Benjamin L. Stewart
Benjamin L. Stewart