**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| American Airlines, Inc., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| Sabre, Inc., a Delaware corporation; Sabre Holdings Corporation, a Delaware corporation and Sabre Travel International Ltd., a foreign corporation, d/b/a Sabre Travel Network; | ) ) ) ) ) ) | Civil Action No.: 4:11-cv-0244-Y |
| Travelport Limited, a foreign corporation and Travelport, LP, a Delaware limited partnership, d/b/a Travelport; | ) ) ) ) | |
| and | ) ) | |
| Orbitz Worldwide, LLC, a Delaware limited liability company, d/b/a Orbitz; | ) ) ) | |
| Defendants. | ) | |

**AMERICAN AIRLINES INC.'S RESPONSE IN OPPOSITION TO TRAVELPORT'S**
**MOTION TO STAY DISCOVERY AND ORBITZ AND SABRE'S JOINDER THERETO**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT AND AUTHORITIES ................................................................................ 4

    A.    The Fact That Defendants Have Filed A Motion To Dismiss Does Not
           Warrant Postponing Discovery ............................................................. 5

    B.    Given The Detailed Factual Allegations Of The Complaint And The
           Pending DOJ Investigation, Defendants' Stay Motion Is Meritless ..................... 7

    C.    Defendants' Arguments For A Stay Based On Discovery Sought Before
           The Rule 26(f) Conference Have Become Moot .................................................. 11

    D.    Defendants Have Not Demonstrated That They Will Be Unduly
           Prejudiced If Discovery Is Not Stayed ............................................................... 11

    E.    American Would Be Seriously Prejudiced By A Discovery Stay ..................... 12

    F.    Sabre's Motion To Create An MDL In This Court Is No Reason To Stay
           Discovery ........................................................................................................... 13

CONCLUSION AND REQUESTED RELIEF ........................................................................ 15

i

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Needle, Inc. v. Nat'l Football League*,
   130 S. Ct. 2201 (2010) ............................................................................................6

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009) ..............................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................................7, 8, 9

*Cajun Offshore Charters, LLC v. BP Prods. N. Am., Inc.*,
   No. 10-1341, 2010 WL 2160292 (E.D. La. May 25, 2010) ....................................14

*Christou v. Beatport, LLC*,
   No. 10-CV-02912-CMA-KMT, 2011 WL 650377 (D. Colo. Feb. 10, 2011) ....................4, 10

*Del Vecchio v. Amazon.com*,
   No. C11-0366RSL, 2011 WL 1585623 (W.D. Wash. Apr. 27, 2011) ................................5, 13

*Dowdy & Dowdy P'ship v. Arbitron, Inc.*,
   No. 2:09-CV-253 KS-MTP, 2010 WL 3893915 (S.D. Miss. Sept. 30, 2010) ........................7

*Eastman Kodak Co. v. Image Technical Servs., Inc.*,
   504 U.S. 451 (1992) ............................................................................................6, 8

*Esquivel v. BP Co. N. Am., Inc.*,
   No. B-10-227, 2010 WL 4255911 (S.D. Tex. Oct. 14, 2010) .................................14

*Falgoust v. Microsoft Corp.*,
   No. 00-0779, 2000 WL 462919 (E.D. La. Apr. 19, 2000) ......................................14

*Ford Motor Co. v. U.S. Auto Club, Motoring Div., Inc.*,
   No. 3-07-CV-2182-L, 2008 WL 2038887 (N.D. Tex. Apr. 24, 2008) ......................4

*Glazer's Wholesale Drug Co., Inc. v. Klein Foods, Inc.*,
   No. 3-08-CV-0774-L, 2008 WL 2930482 (N.D. Tex. July 23, 2008) ..................4, 5

*Heatransfer Corp. v. Volkswagenwerk, A. G.*,
   553 F.2d 964 (5th Cir. 1977) ...................................................................................6

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
   677 F.2d 1045 (5th Cir. 1982) .................................................................................5

*Meinhart v. Haillburton Energy Servs., Inc.*,
No. H-11-0073, 2011 WL 1463600 (S.D. Tex. Apr. 4, 2011)................................14

*In re Netflix Antitrust Litig.*,
506 F. Supp. 2d 308 (N.D. Cal. 2007) ................................................................10

*Ntakirutimana v. CHS/Community Health Sys., Inc.*,
No. 5:09-CV-114, 2010 WL 3810007 (S.D. Tex. Sept. 27, 2010)............................4

*Null v. Easley*,
No. 4:09-CV-296-Y, 2009 WL 3853765 (N.D. Tex. Nov. 18, 2009) .......................5

*OMG Fid., Inc. v. Sirius Techs., Inc.*,
239 F.R.D. 300 (N.D.N.Y. 2006)..........................................................................5

*In re Penn Cent. Sec. Litig.*,
333 F. Supp. 382 (J.P.M.L. 1971).........................................................................14

*Starr v. Sony BMG Music Entm't*,
592 F.3d 314 (2d Cir. 2010), *cert. denied,* 131 S. Ct. 901 (2011) ...........................6

*Todd v. Exxon Corp.*,
275 F.3d 191 (2d Cir. 2001)....................................................................................6

*U.S. Bank v. Royal Indem. Co.*,
No. 3:02-CV-0853-P, 2002 WL 31114069 (N.D. Tex. Sept. 23, 2002).................14

*Von Drake v. Nat'l Broad. Co.*,
No. 3-04-CV-0652-R, 2004 WL 1144142 (N.D. Tex. May 20, 2004)....................4

*Williams v. New Day Farms, LLC*,
No. 2:10-CV-0394, 2010 WL 3522397 (S.D. Ohio Sept. 7, 2010) .........................5

## RULES

Fed. R. Civ. P. 16...................................................................................................13

Fed. R. Civ. P. 26...............................................................................................10, 11

## OTHER

69 Fed. Reg. 976, 992 ..........................................................................................8, 9

American Airlines, Inc. ("American") respectfully files this Response in Opposition to defendant Travelport Limited and Travelport LP's (collectively "Travelport's") Motion to Stay Discovery Pending a Decision of Travelport's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint [Docket No. 88], defendant Orbitz Worldwide, LLC's ("Orbitz's") Joinder to Travelport's Motion to Stay [Docket No. 92] ("Orbitz's Joinder"), defendants Sabre, Inc., Sabre Holdings Corporation, and Sabre Travel International Ltd.'s ("Sabre's") Joinder to Travelport's Motion to Stay [Docket No. 101] ("Sabre's Joinder").[1]

## INTRODUCTION

American's complaint contains detailed factual allegations demonstrating that the defendants are engaged in significant antitrust violations in the distribution of airlines tickets—violations which are the subject of a parallel antitrust investigation by the Department of Justice ("DOJ"). From the outset of this case, defendants have done everything possible to delay this litigation,[2] and particularly the commencement of discovery. Moreover, this is not the otherwise harmless delay strategy that some defendants employ. Rather, in this case with contracts between American and the GDS Defendants[3] due to expire (or be terminable) within the next several months, defendants have threatened to take punitive action in order to coerce American into abandoning not only its Direct Connect initiative, which has been the target of the

---

[1] All arguments included in American's response apply with equal force to Orbitz and Sabre, which have joined in Travelport's motion. Accordingly, American refers to Travelport's Motion to Stay, Orbitz's joinder and Sabre's joinder thereto as "defendants' motions" to stay discovery.

[2] For example, the defendants took weeks to provide comments on a draft protective order that was modeled on one already agreed to between Travelport and American in another litigation and insisted on re-filing essentially the same motions to dismiss in response to American's amendment of the Complaint that did nothing but add Sabre as a defendant and changed none of the allegations addressed to Travelport. This had the effect of delaying the briefing of both Travelport's motion to dismiss, as well as this stay motion, by a month.

[3] Sabre and Travelport will be referred to as the "GDS Defendants."

defendants' anticompetitive conduct alleged in the Complaint,[4] *but this lawsuit as well.*  Thus, defendants are fully aware that if they carry out their threats—such as Sabre's threat to bar American completely from participating in its GDS as of September 1—American will have no choice but to surrender and sign new contracts with Sabre and Travelport that will enable defendants to continue their unlawful anticompetitive conduct and prevent the development of American's Direct Connect competitive initiative.  Indeed, in order to coerce American to yield to their anticompetitive demands in advance of these looming contract termination dates, within the past few weeks Sabre has dramatically raised American's booking fees—effective immediately—and Travelport informed American that it will do the same and, if American takes the only self-help measure available to it to recover these increased costs, it will retaliate further.  Thus, defendants' transparent strategy is to delay discovery until they can destroy American's ability to prosecute this lawsuit.

This motion to stay discovery is part and parcel of that strategy, and as demonstrated below, defendants have failed to satisfy any of the requirements necessary to obtain a stay.  Their principal argument is that discovery should be stayed because they have filed a motion to dismiss the Complaint based primarily on their criticism of the relevant markets alleged in the Complaint.  Their position is meritless because, *inter alia*: (1) the Complaint contains myriad detailed factual allegations that are clearly sufficient to establish a plausible claim; (2) American's claims, and particularly its allegations defining the relevant markets and defendants' illicit exercise of market power within them are entirely consistent with not only the prior findings of the DOJ and the DOT, but with the investigation of the GDS' conduct that the DOJ has recently launched and is now conducting; and (3) the defendants cannot establish that they

---

[4] American's First Amended Complaint [Docket No. 70] shall be referred to here as the Complaint."

will be unduly prejudiced if a stay is denied because, among other things, the GDS Defendants

are or will be producing documents in response to the civil investigative demands ("CIDs")

issued by the DOJ as part of its investigation, and the defendants have and/or will be producing

many of the same documents in their ongoing state court litigations with American in the state

courts in Illinois (Travelport) and Texas (Sabre).[5]  The incremental effort required to produce

documents in this case will not cause any undue prejudice or justify a discovery stay.  Moreover,

while defendants have thus far refused to do so, the parties can easily coordinate the discovery in

the state and federal litigations in order to minimize any duplication and burden.  Thus, the only

party that stands to suffer serious prejudice is American, in the event that a stay of discovery is

granted.

Finally, Sabre's argument—that discovery should be stayed not only until this Court

decides the pending motion to dismiss but also until the MDL panel decides Sabre's pending

MDL application sometime in the fall—is particularly specious and serves only to highlight

Sabre's inappropriate delay strategy.  The MDL application itself, based entirely on the fact that

there is *one* other antitrust case, filed against Sabre by US Air in New York, is inherently

suspect, especially because the state litigation between American and Sabre, which is proceeding

expeditiously, cannot be consolidated with the federal cases.  In any event, the notion that

discovery in this case should be stayed merely because Sabre has filed a novel MDL application

---

[5] The Texas state litigation American brought against Sabre began in January originally as a contract case in which American sought a temporary injunction due to Sabre's retaliatory action that Sabre took at that time consisting of doubling American's booking fees and biasing American's flight and fare content in its GDS display.  The state court granted the temporary injunction to enjoin such biasing.  Although the parties agreed to a stand-down through June, that litigation has now resumed.  In light of Sabre's threat to terminate American on August 31 and remove American's flight and fare content from the Sabre GDS, American has now amended its complaint to assert state antitrust claims as well as contract claims.  Given the imminent harm to American and the state court's prior experience with Sabre's retaliatory conduct, American has sought a temporary injunction in state court and a hearing was scheduled for August 22 before Sabre removed the case on July 18, hours before a hearing was schedule to proceed in the state court.  That removal was without any legal basis, and American will seek an immediate remand of the case.

is legally unsupported and is merely another chapter in Sabre's attempt to avoid producing damaging evidence before it can implement the punitive actions it has now begun and is threatening in order to force American to abandon Direct Connect and this case.  Accordingly, the defendants have not shown good cause to stay discovery and therefore their stay motions should be denied.

## ARGUMENT AND AUTHORITIES

A defendant seeking to stay discovery bears a heavy burden.  "[T]here is a strong presumption in favor of discovery, and it is the party who moves for a stay that bears the burden of overcoming this presumption."  *Ntakirutimana v. CHS/Community Health Sys., Inc.*, No. 5:09-CV-114, 2010 WL 3810007, at *1 (S.D. Tex. Sept. 27, 2010).  Further, under the Federal Rules of Civil Procedure, a "stay is the exception rather than the rule" when a motion to dismiss has been filed.  *Ford Motor Co. v. U.S. Auto Club, Motoring Div., Inc.*, No. 3-07-CV-2182-L, 2008 WL 2038887, at *1 (N.D. Tex. Apr. 24, 2008) ("'[H]ad the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect.'").  A stay may only be granted "for good cause shown," and not "merely because [the] defendant believes it will prevail on its motion to dismiss."  *Glazer's Wholesale Drug Co., Inc. v. Klein Foods, Inc.*, No. 3-08-CV-0774-L, 2008 WL 2930482, at *1 (N.D. Tex. July 23, 2008); *see also Christou v. Beatport, LLC*, No. 10-CV-02912-CMA-KMT, 2011 WL 650377, at *1 (D. Colo. Feb. 10, 2011) ("The underlying principle in a determination of whether to grant or deny a stay clearly is that '[t]he right to proceed in court should not be denied except under the most extreme circumstances.'").

Among the factors considered in deciding whether to stay discovery are: (1) the strength of the dispositive motion filed by the party seeking a stay; (2) the burden of responding to such discovery; and (3) the breadth of discovery sought.  *See Von Drake v. Nat'l Broad. Co.*, No. 3-

04-CV-0652-R, 2004 WL 1144142 at *1 (N.D. Tex. May 20, 2004).  In addition, courts also

consider whether a stay would unduly prejudice the party opposing the stay, which is facing

ongoing, allegedly wrongful conduct.  *See Del Vecchio v. Amazon.com*, No. C11-0366RSL, 2011

WL 1585623, at *1 (W.D. Wash. Apr. 27, 2011) (denying stay of discovery where "plaintiffs

[(the party opposing the stay)] could suffer prejudice by a potentially lengthy discovery stay, in

part because they seek to enjoin on-going allegedly wrongful conduct"); *Williams v. New Day

Farms, LLC*, No. 2:10-CV-0394, 2010 WL 3522397, at *3 (S.D. Ohio Sept. 7, 2010) (denying

stay of discovery where "potential prejudice to plaintiffs [(the party opposing the stay)] and the

delay of the case outweigh[ed] the defendants' arguments in favor of a stay[,]" and noting that

"the pendency of a potentially dispositive motion as to which the parties have presented

substantial arguments on both sides, is simply not sufficient to warrant a complete stay of

discovery"); *OMG Fid., Inc. v. Sirius Techs., Inc*., 239 F.R.D. 300, 305 (N.D.N.Y. 2006)

(denying stay of discovery in part because "plaintiff will potentially be unfairly prejudiced"

should discovery be stayed since plaintiff would not have an opportunity to develop the record);

*see also Glazer's Wholesale Drug Co., Inc.*, 2008 WL 290482, at *1 (denying motion to stay

pending ruling on motion to dismiss, in part, because of prejudice to plaintiffs).

### A.      The Fact That Defendants Have Filed A Motion To Dismiss Does Not Warrant Postponing Discovery

It is well-settled that "[a] motion to dismiss for failure to state a claim is viewed with

disfavor and is rarely granted."  *Null v. Easley*, No. 4:09-CV-296-Y, 2009 WL 3853765, at *2

(N.D. Tex. Nov. 18, 2009) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale

Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)).  Moreover, the defendants' motions here

are particularly suspect.  Travelport complains that American "continues to rely on an

implausible product market."  (TP Mem. at 1.)  It is black letter law, however, that the relevant

market is a question of fact that is *not* proper for resolution at the motion to dismiss stage.  *See, e.g.*, *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 482 (1992) ("The proper market definition in this case can be determined only after a factual inquiry into the 'commercial realities' faced by consumers."); *Heatransfer Corp. v. Volkswagenwerk, A. G.*, 553 F.2d 964, 980 (5th Cir. 1977) ("Relevant market is essentially a question of fact . . . ."); *see also Todd v. Exxon Corp.*, 275 F.3d 191, 199 (2d Cir. 2001) (noting that "market definition is a deeply fact-intensive inquiry") (Sotomayor, J.).  And as discussed below, American's well-pleaded relevant product markets are plainly plausible given that they mirror the stated views of the DOT and DOJ.[6]  *See Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 324 (2d Cir. 2010) (reversing grant of motion to dismiss where, *inter alia*, civil antitrust investigations of the challenged conduct rendered the alleged antitrust conspiracy plausible), *cert. denied,* 131 S. Ct. 901 (2011); *cf. Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").  In short, there is more than enough substance to American's claims to warrant proceeding with discovery now.

---

[6] In its motion to dismiss, Orbitz argues that it is immune from scrutiny under the antitrust laws because, as a matter of law, it cannot conspire with Travelport since they are members of the same corporate family.  (Defendant Orbitz Worldwide, LLC's Motion to Dismiss Plaintiff's Complaint at 2.)  Orbitz's defense is premature before any discovery has taken place on this subject and is not supported by applicable case law.  As explained in American's Response to Orbitz's Motion to Dismiss, Orbitz is not a wholly-owned subsidiary of Travelport and cannot satisfy the test set out by the Supreme Court in *American Needle, Inc. v. National Football League*.  (*See* American Resp. in Opp'n to Orbitz's Mot. to Dismiss the First Am. Compl. [Docket No. 99] at 5-6 (citing, *inter alia*, *Am. Needle, Inc. v. Nat'l Football League,* 130 S. Ct. 2201, 2212 (2010), which held that outside the context of wholly-owned subsidiaries, the applicability of the Sherman Act depends on whether the two entities are "independent centers of decision-making").)  Orbitz also claims that its agreements with Travelport do not foreclose a "substantial share" (i.e., more than 30%) of any allegedly relevant market to AA Direct Connect.  (*Id.* at 1-2.)  But American's Complaint alleges that Travelport and its travel agency subscribers, including Orbitz, have entered into agreements that have effectively foreclosed virtually all of the market for the provision of airline booking services to Travelport subscribers.  (*See* Compl. ¶¶ 63-73.)  In any event, the *cumulative* share of both the relevant market and sub-market foreclosed by Travelport's travel agency subscriber agreements is over 30% and virtually 100%, respectively, which is plainly sufficient to state a claim.  (Compl. ¶¶ 3-4.)

And this result does not change simply because this is an antitrust case as Travelport incorrectly suggests. As defendants concede, there is no "'automatic, blanket prohibition on any and all discovery before an antitrust plaintiff's complaint survives a motion to dismiss.'" (TP Mem. at 7.) *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), did not erect such a prohibition; to the contrary, the Supreme Court was concerned with weeding out "fishing expeditions" and other groundless claims prior to embarking on discovery.[7] This is not such a case. Indeed, not only does this Complaint contain myriad, detailed factual allegations supporting a plausible claim, but the DOJ's investigation, which covers the *same* conduct detailed in American's Complaint, is sufficient standing alone to show that a stay is not warranted in this case.

**B.** **Given The Detailed Factual Allegations Of The Complaint And The Pending DOJ Investigation, Defendants' Stay Motion Is Meritless.**

In contrast to complaints that are susceptible to dismissal at the pleadings stage because they are based on mere conclusory assertions and bare legal conclusions, American's Complaint is grounded in detailed *factual allegations* showing that the GDS defendants, and the travel agents they have co-opted, including defendant Orbitz, have engaged in a concerted course of unlawful anticompetitive actions that were intended to prevent, and have had the effect of preventing, competition in GDS services. (*See* Compl. ¶¶ 49-111.)

The defendants' primary argument – that American's claims are supposedly based on a false description of the structure of the industry and the relevant markets – provides no support for its motion to stay discovery. Even beyond the case law cited above holding that a defendant's attack on the relevant market alleged in a complaint ordinarily cannot be resolved by

---

[7] In support of this argument the defendants cite *Dowdy & Dowdy Partnership v. Arbitron, Inc.*, but unlike the present case, the plaintiff did not oppose the stay and would not bear an equal burden in the discovery process. No. 2:09-CV-253 KS-MTP, 2010 WL 3893915, at *1-2 (S.D. Miss. Sept. 30, 2010). Here, American is fully prepared to proceed and respond to discovery sought by defendants.

a motion to dismiss, American has alleged facts supporting its claims in allegations that are not merely plausible, but entirely consistent with findings by both the DOJ and the DOT.  For example, the DOJ concluded in 1996 and again in 2003 that the GDSs have *market power* over American and other airlines: "Each [GDS] provides access to a large, discrete group of travel agents, and unless a carrier is willing to forego access to those travel agents, it must participate in every [GDS].  Thus, *from an airline's perspective, each [GDS] constitutes a separate market and each system possesses market power* over any carrier that wants travel agents subscribing to that [GDS] to sell its airline tickets."  (*Id.* ¶ 43 (emphasis added).)[8]  Moreover, consistent with those prior findings, the DOJ is now conducting a major antitrust investigation of the GDS's conduct.

Similarly, while the defendants not surprisingly attempt to disparage American's allegations that they have engaged in anticompetitive conduct that has caused harm to competition, the DOT concluded in 2004 that "[GDS] fees *exceed competitive levels* . . . .  We have not seen evidence that the [GDS's] fees generally respond to market forces . . . ."  (*Id.* ¶ 45.) Consistent with that finding, American alleges that Travelport and Sabre charge "excessive booking fees" that have increased over the last decade despite declining or flat costs, and that "were it not for the anticompetitive conduct of defendants and other industry participants, it

---

[8] *See also* DOT Computer Reservations System (CRS) Regulations, 69 Fed. Reg. 976, 988 (Jan. 4, 2004) ("[A]irlines wishing to electronically provide information and booking capabilities to travel agencies currently have no effective substitute for participation in each [GDS]. . . . Each [GDS] is a separate market insofar as the airlines are concerned.").  Thus, Travelport's assertion (*see* TP Mem. at 5) that a "single-brand product market" is the exception, not the rule, in antitrust law ignores regulatory findings concerning the proper relevant market *in this industry*.  Moreover, the DOJ would have been well aware of the "governing Supreme Court decision in this area"—presumably *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992)—when it made its findings years after that decision was issued.

could distribute tickets using AA Direct Connect at an average cost of less than half what it currently pays for bookings made through a GDS." (*Id.* ¶¶ 46-47.) [9]

American's Complaint also sets forth the *uncontested fact* that Travelport and Sabre have engaged in display bias—a practice repeatedly condemned by the DOT and DOJ by which GDSs present a deliberately misleading display of airline, flight, fare and availability information—in retaliation for American's pursuit of AA Direct Connect and its threat to the GDS monopolies. (*Id.* ¶¶ 96-100, 104-09.) It is well-established that such display bias is harmful to airline competition and consumers,[10] and, in fact, Sabre represented to regulators as early as 2003 that it would not engage in this anticompetitive practice. (*Id.* ¶ 108.)

Moreover, the defendants' own actions belie their claims that American's antitrust claims are based on antiquated history that no longer reflects the structure of the industry. (*See* Mem. in Support of Travelport's Rule 12(b)(6) Motion to Dismiss Pl.'s First Amended Compl. [Docket No. 86] at 2-3.) The Complaint sets forth the *uncontested fact* that, within the past year, both Travelport and Sabre *doubled* American's booking fees in retaliation for American's AA Direct Connect initiative—*knowing* that American was captive to their respective monopolies and could not survive without participating in them. (Compl. ¶¶ 96, 103.) And, since the Complaint was filed, Sabre has again dramatically increased American's booking fees yet again in order to force American to abandon Direct Connect, and Travelport has threatened to do the same. It is

---

[9] As alleged in Paragraph 55 of the Complaint, Sabre and Travelport both contend that they offer "discounts" on their booking fees in exchange for participating airlines' agreement to the anticompetitive "most favored nation" provisions. However, these "discounted" booking fees are still well above competitive levels.

[10] *See, e.g.*, DOT Computer Reservations System (CRS) Regulations, 69 Fed. Reg. 976, 992 (Jan. 4, 2004) ("Our rules have prohibited [GDSs] from biasing their displays in order to prevent unfair methods of competition and deceptive practices. Display bias both prejudices airline competition, by reducing the airlines' ability to compete on the basis of the relative attractiveness of their schedules and fares, and causes travel agents to give misleading information or incomplete advice to their customers."); Reply Comments of the Department of Justice, at 19-20 (June 9, 2003) ("Experience shows that bias is easy to implement and effective in limiting competition.") (App. at 2-3 (Ex. 1).)

difficult to imagine a clearer demonstration of monopoly power than the ability of a firm to increase prices unilaterally without fear that its customer will be able to take its business elsewhere.  Moreover, Sabre has now declared that unless American capitulates it will completely bar American from participating in the Sabre GDS as of August 31, 2011—knowing that taking such action would irreparably harm American.

In light of this type of egregious anticompetitive conduct, it is hardly surprising that the DOJ has now launched its investigation of the GDSs, and both Travelport and Sabre, along with other industry participants, including American, have acknowledged receiving CIDs from the DOJ.[11]  According to DOJ policy, CIDs are issued when "there is reason to believe that any violation within [DOJ's] scope of authority has occurred."  Dept. of Justice Antitrust Division Manual, Ch. III at 47-48 (4th ed. 2008) (App. at  8 (Ex. 3)) (internal quotations and citations omitted).  In similar circumstances post-*Twombly*, courts have denied motions to stay discovery. *See Christou*, 2011 WL 650377 (denying stay of discovery in case alleging violations of Section 1 and 2 of the Sherman Act where, *inter alia*, the public interest weighed against a stay because the alleged antitrust violations were ongoing).  Indeed, even in *In re Netflix Antitrust Litigation*, 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007), which Travelport cites (*see* TP Mem. at 8 n.2), the court authorized limited discovery on a complaint that was dismissed with leave to amend. Thus, the defendants' clearly cannot demonstrate that their motions to dismiss are so strong as to warrant the extreme relief of staying discovery.  To the contrary, the motions are extremely weak and, like defendants' other actions, appear to have been interposed for purposes of delay.

---

[11] *See* Mary Schlangenstein, *Justice Department Opens Probe of Airline Fare Distributors*, BLOOMBERG, May 20, 2011 ("The U.S. Justice Department is investigating possible antitrust violations by companies that distribute airline fare and flight data as they spar with carriers over control of the information.  Sabre Holdings Corp., of Southlake, Texas, and Atlanta-based Travelport Ltd. said today they were asked by the agency for information.") (App. at 5 (Ex. 2)).

### C. **Defendants' Arguments For A Stay Based On Discovery Sought Before The Rule 26(f) Conference Have Become Moot**

Before the 26(f) conference – after which discovery is authorized under the Federal Rules of Civil Procedure without any showing of good cause or leave of court—Travelport and Orbitz argued that American was required to demonstrate a "compelling justification" to seek discovery before the Rule 26(f) conference.  (*See* TP Mem. at 11.)  The cases cited by Travelport for this proposition involved attempts to obtain discovery before the Rule 26(f) conference, which is no longer the situation here.  Instead, the parties held a Rule 26(f) conference on July 5, 2011, and American properly served discovery on the defendants that same day.  Therefore, the arguments, cases and purported legal standard in Section IV of Travelport's Memorandum are irrelevant and have become moot.  (*See* TP Mem. at 12-16.)

### D. **Defendants Have Not Demonstrated That They Will Be Unduly Prejudiced If Discovery Is Not Stayed**

Defendants also have failed to satisfy their burden with regard to the second and third factors, concerning the scope of discovery and burden to the producing party.[12]  American's discovery requests will not impose undue burdens on the defendants.  Among other things, the defendants already are engaged in related discovery, thus reducing the burden associated with the discovery in this litigation.  (*See* TP Mem. at 9-10.)  Indeed, Travelport acknowledges that it has already produced—or is preparing to produce—documents in response to both: (1) discovery requests issued months ago in the pending contract litigation brought by Travelport in Illinois;

---

[12] As an initial matter, the defendants argue that American's non-exhaustive list of document preservation categories is overbroad and unduly burdensome.  (*See* TP Mem. at 8.)  But even assuming this document preservation letter could have been considered a document request, it is now moot because the defendants have now been served with specific requests for production, and the parties obviously can meet and confer with respect to any particular requests that defendants believe will be unduly burdensome.  Although, the defendants criticize American for not specifying the number of interrogatories and depositions it sought (*see* TP Mem. at  11), this argument too, has been mooted by the Rule 26(f) conference at which American proposed precise descriptions of all types of discovery it seeks.

and (2) the DOJ's CID.  Similarly, Sabre has already produced and/or will very soon be

producing many of the same documents in response to both the DOJ's CID and the discovery

requests in the pending Texas state court litigation between American and Sabre.  Moreover,  in

light of the central role that Orbitz has played in events that are at the heart of both the Illinois

state litigation and this case (*see* Compl. ¶¶ 69-73, 89-95), Orbitz will be subject to discovery in

these other proceedings that also will be relevant here.[13]  As previously noted, American has

sought the defendants' agreement that documents produced in other related litigations may be

used in this lawsuit, which would further reduce any burden associated with the discovery in this

case and enable the parties to coordinate and streamline discovery.  Although defendants have

inexcusably refused to agree to such an obviously sensible arrangement, they should not be heard

to complain about the burden of proceeding with discovery here while the related discovery

proceeds.

### E.    American Would Be Seriously Prejudiced By A Discovery Stay

As Sabre has already threatened, within the next several months the GDS Defendants can

deny American access to their travel agency subscribers and the critical business travelers they

serve, who provide American with a majority of its revenues.[14]  The clear *and only* purpose of

such punitive action will be to force American to abandon not only its Direct Connect

competitive initiative, but this lawsuit—and indeed, there can be no other motivation for

---

[13] Indeed, American has issued a subpoena to Orbitz in the Illinois state litigation.  Further, Travelport's retaliation against American is one of the main allegations of anticompetitive conduct by Travelport and American has alleged that Orbitz—a Travelport affiliate—was part and parcel of that unlawful scheme based on actual agreements with Travelport to boycott AA Direct Connect.  Discovery of Orbitz is thus highly relevant to this aspect of American's antitrust claims here.

[14] American and Travelport are very close to reaching a temporary agreement under which Travelport would agree not to exclude American from its GDS until January 31, 2012.  Even if such an agreement were finalized, the threat remains that Travelport still could exclude American upon the expiration of the temporary agreement.  Moreover, Travelport has already informed American that it will dramatically raise its booking fees as of August 1 and engage in display bias if American takes the only self-help measure available to it to recover these increased costs.

defendants' retaliatory conduct, which is otherwise directly contrary to the defendants' business interest to display information concerning American flights and maximize sales of tickets on American.  American will be irreparably harmed if the GDS defendants exclude American from their GDS systems, resume biasing of American's flights or raise the booking fees they charge American to unsustainable levels.  Moreover, American will be seriously prejudiced if it cannot begin conducting discovery until defendants have launched the next round of their retaliatory campaign.

Beyond this potential immediate threat to American's business, American seeks permanent injunctive relief because the GDSs have engaged and continue to engage in an array of exclusionary conduct designed to stifle Direct Connect.  Because the harm alleged by American is continuing and a stay of discovery could prevent American from obtaining the evidence necessary to prosecute its claims in time to preserve Direct Connect as a potentially viable channel, a stay of discovery would be prejudicial to American and should not be granted. *See Del Vecchio*, 2011 WL 1585623, at *1 (denying stay of discovery where "plaintiffs [(the party opposing the stay)] could suffer prejudice by a potentially lengthy discovery stay, in part because they seek to enjoin on-going allegedly wrongful conduct"); *see also supra* p. 5.

**F.      Sabre's Motion To Create An MDL In This Court Is No Reason To Stay Discovery**

In Sabre's recent joinder, it argues that the Court should stay discovery until the JPML rules on its motion to create an MDL.  (Sabre's Joinder at 4.)  This argument is illogical, unsupported by the cases cited by Sabre, and a transparent delay tactic.[15]  In the first instance,

---

[15] Sabre had previously stated that it "see[s] no reason to deviate from the normal discovery process in this case" and that "[o]nce [there is] a Rule 16 conference and a scheduling order, [it] will be prepared to start with the discovery process in compliance with the timeline set forth in that order." *See* Letter from Karma Giulianelli to Richard Rothman, dated June 21, 2011 (App. at 10 (Ex. 4)).  Sabre made no mention of the fact that it intended to then seek to postpone discovery until any motion to dismiss was decided, much less until the MDL panel decided the application they planned to make based on the US Airways case, which had already been filed in the Southern

Sabre's MDL motion is patently meritless, as Sabre is a party to only three litigations—this one, an antitrust lawsuit brought against it by US Air in New York, and the Texas state court litigation between American and Sabre which could not be consolidated with the federal lawsuits in any event.[16]  Even in the unlikely event that Sabre's motion were granted and an MDL is created in this Court, discovery still will need to occur in this case.[17]  Moreover, as the court in *In re Penn Central Securities Litigation* succinctly put it "[a]ny discovery obtained prior to the Panel decision will benefit the parties to the action if transfer is denied and will presumably be made available to all other parties if transfer is ordered."  333 F. Supp. 382, 384 n.4 (J.P.M.L. 1971). For this reason, the court in *Cajun Offshore Charters, LLC v. BP Products North America, Inc.*, recognized that "the use of stay orders by the district courts, particularly in the area of discovery, is usually undesirable."  No. 10-1341, 2010 WL 2160292, at *1 (E.D. La. May 25, 2010). Moreover, to the extent this Court makes any discovery rulings, they still will apply even if the JPML decides to create an MDL in this Court, as Sabre has urged.  Thus, there is no merit to Sabre's contention that "this Court likely will have to revisit similar discovery matters a second time."  (Sabre's Joinder at 3.)

---

District of New York.  Moreover, Sabre waited nearly a month to try to create an MDL.  The US Airways case was filed months ago and Sabre itself sought to intervene in this case on June 1, 2011.

[16] For the reasons stated above in footnote 5, American believes that this case should be promptly remanded, and that it will be pending in state court by the time the JPML considers Sabre's MDL motion.

[17] Sabre's MDL motion, and its attempt to stay discovery here pending its resolution, is particularly meritless given Sabre's refusal to agree that the documents produced in each of the two litigations between American and Sabre can be used in the other.  Thus, it is readily apparent that Sabre has no genuine interest in coordinating discovery and avoiding duplication.  Instead, it is merely interested in delaying discovery so that its retaliatory actions can pressure American to abandon this lawsuit and Direct Connect before it obtains the discovery it needs to prosecute its claims.

None of the cases cited by Sabre is to the contrary. (*See id.* at 3-4.) Indeed, none involved an analysis of whether the court should stay discovery pending an MDL application.[18] Instead, the primary issue in most of these cases was whether the transferor court would rule on a pending motion to remand before the JPML determined whether to transfer the case.[19] While there may be efficiencies in allowing one court to rule on common motions to remand, it makes no difference from the standpoint of efficiency whether discovery occurs before or after an MDL is created under the circumstances here. Thus, there is no reason for this Court to stay discovery while the JPML determines whether to create an MDL in this Court.

## CONCLUSION AND REQUESTED RELIEF

Because the defendants have failed to demonstrate good cause, American respectfully requests that the Court deny the defendants' motion to stay discovery. American also requests any other and further relief to which it may be justly entitled.

---

[18] In one of Sabre's cases, the discovery stay was not even opposed by the plaintiff. *See U.S. Bank v. Royal Indem. Co.*, No. 3:02-CV-0853-P, 2002 WL 31114069, at *1 (N.D. Tex. Sept. 23, 2002) ("Because this stay on discovery is unopposed, the Court GRANTS Defendant's Motion to stay discovery.").

[19] *See Esquivel v. BP Co. N. Am., Inc.,* No. B-10-227, 2010 WL 4255911, at *3 (S.D. Tex. Oct. 14, 2010) (plaintiffs "urge the Court not to rule on the pending motion for stay without first ruling on the motion to remand"); *Meinhart v. Haillburton Energy Servs., Inc.*, No. H-11-0073, 2011 WL 1463600, at *1 (S.D. Tex. Apr. 4, 2011) (plaintiff moved to remand and defendant moved to stay pending JPML ruling on consolidation); *Falgoust v. Microsoft Corp.*, No. 00-0779, 2000 WL 462919, at *1-2 (E.D. La. Apr. 19, 2000) (court considering whether to rule on motion to remand or permit transferee court to rule on the issue).

Dated:  July 18, 2011

Respectfully submitted,

/s/ Yolanda Garcia
      Yolanda Garcia

R. Paul Yetter
State Bar No. 22154200
pyettr@yettercoleman.com
Anna Rotman
State Bar No. 24046761
arotman@yettercoleman.com
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010
713.632.8000
713.632.8002 (fax)

Richard A. Rothman
Richard.rothman@weil.com
James W. Quinn
james.quinn@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
212.310.8426
212.310.8285 (fax)

Yolanda Garcia
State Bar No. 24012457
yolanda.garcia@weil.com
Michelle Hartmann
State Bar No. 24032401
michelle.hartmann@weil.com
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201-6950
214.746.7700
214.746.7777 (fax)

M.J. Moltenbrey
mmoltenbrey@dl.com
DEWEY & LEBOEUF LLP
1101 New York Avenue, N.W.
Washington, D.C. 20005
202.346.8738
202.346.8102 (fax)

Bill Bogle
State Bar No. 025661000
bbogle@hfblaw.com
Roland K. Johnson
State Bar No. 00000084
rolandjohnson@hfblaw.com
HARRIS, FINLEY & BOGLE, P.C.
777 Main Street, Suite 3600
Fort Worth, Texas 76102
817.870.8700
817.332.6121 (fax)

*Attorneys for Plaintiff American Airlines, Inc.*

## CERTIFICATE OF SERVICE

 I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system pursuant to the Court's Local Rule 5.1(d) this 18th day of July, 2011.

/s/ Robert S. Velevis   
Robert S. Velevis
