IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AMERICAN AIRLINES, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:11-cv-00244-Y |
| TRAVELPORT LIMITED, et al., | ) |
| Defendants. | ) |

**REPLY IN FURTHER SUPPORT OF TRAVELPORT'S MOTION
FOR LEAVE TO FILE A SURREPLY IN OPPOSITION TO
<u>AMERICAN AIRLINES, INC.'S MOTION FOR RECONSIDERATION</u>**

As Travelport noted in its opening brief, Plaintiff American Airlines, Inc. ("AA") first filed a proposed Third Amended Complaint with its *reply* brief in support of its motion for reconsideration. It would be unjust to deny Travelport an opportunity to respond to that proposed Third Amended Complaint. If granted leave to file its proposed surreply, Travelport will show the Court why AA's proposed Third Amended Complaint confirms that the Court was correct to dismiss Count IV of AA's First Amended Complaint with prejudice, and why it would be futile to reverse that decision. (*See* Travelport Proposed Surreply [Doc. 222-1].)

AA argues that Travelport should not be permitted to file its proposed surreply because, according to AA, the proposed Third Amended Complaint does not constitute "new evidence on the issues germane to reconsideration." (AA Opp. to Travelport Mot. for Leave to File Surreply [Doc 226] at 2.) But, if AA truly believed that the proposed Third Amended Complaint was not germane to reconsideration, AA would not have attached it to its Reply brief "[t]o assist the Court in evaluating the Motion [for Reconsideration]." (AA Reply Br. on Mot. for Recons. [Doc. 202] at 2, n.1.)

Moreover, unless the Court is willing to accept AA's naked assertion that it can fix the pleading deficiencies identified by the Court when dismissing Count IV with prejudice, the *only* way for the Court to evaluate AA's motion is to review the proposed amendments in the Third Amended Complaint. (See Travelport Opp. Br. [Doc. 182] at 7.) Thus, the proposed Third Amended Complaint is not only germane but essential to the determination of AA's motion. AA should not be permitted to attach its proposed amended pleading to its reply brief without giving Travelport the opportunity to file a surreply showing why AA's proposed amendments do not in fact remedy the pleading defects.

Indeed, in addressing Travelport's proposed surreply, AA implicitly concedes that the proposed Third Amended Complaint does not allege that Travelport's contracts with its travel agency subscribers foreclose a substantial share of AA's broader alleged market. (AA Opp. Br. [Doc. 226] at 3.) Instead, AA argues that it is sufficient if AA alleges that Travelport's contracts foreclose a substantial share of the alleged Travelport-only submarket. (*Id*.) AA thus argues that its single-brand submarkets are plausible antitrust markets for the purpose of its proposed Count IV, not just its monopolization claims. This argument is wrong for at least three reasons.

First, AA's argument is inconsistent with its own pleadings. Whereas Counts I, II, and III (AA's monopolization claims) specifically allege effects in the single-brand submarkets, Count IV only alleges an effect in the broader "market for the provision of airline booking services to travel agents." (*Compare* Proposed Third Am. Compl. [Doc. 203] ¶ 190 *with id.* ¶¶ 177, 180, 183.) AA's argument also focuses on the wrong side of the market. Count IV alleges that Travelport's "exclusive or near-exclusive" contracts with travel agencies foreclose AA Direct Connect from competing for *travel agencies*. (*See id.* ¶¶ 72-76.) But AA's single-brand markets are based solely on allegations about GDS competition for *airlines*. AA alleges that "*from the standpoint of airlines* such as American, different GDSs are not ready substitutes for

2

one another." (*Id*. ¶ 46 (emphasis added).)  AA has never alleged that GDSs are not substitutes from the standpoint of *travel agencies*.  To the contrary, when defending its single-brand market definitions, AA has expressly disavowed any claim based on Travelport's market power over travel agency subscribers, stating, "The Complaint does not allege that TVP exercises monopoly power with respect to travel agents; rather it alleges that TVP has monopoly power with respect to AA and other network airlines.  AA is TVP's customer."  (AA Opp. Br. to Travelport's Mot. to Dismiss First Am. Compl. [Doc. 107] at 12.)  Thus, to the extent AA's single brand markets have any relevance to AA's pleadings, it is from the perspective of airlines as consumers of GDS services, not from the perspective of airline direct connects as competitors for travel agencies.

Second, AA's substantial-foreclosure argument is inconsistent with this Court's opinion dismissing Count IV, in which the Court correctly looked to the broader market, and not the Travelport-only submarket, when evaluating the sufficiency of the claim.  For example, when analyzing whether Count IV passed the "market-power screen" for alleged Section 1 violations, the Court looked at Travelport's alleged 34% share of the broader market, not Travelport's alleged 100% share of the Travelport-only submarket. (Order [Doc. 156] at 28-29.)  Similarly, when addressing, in the context of Count IV, whether Travelport's contract with Orbitz foreclosed a substantial share of the market, the Court analyzed Orbitz's share of the broader market, not Orbitz's share of the Travelport-only submarket. (*Id*. at 33.)

Third, AA's substantial-foreclosure argument is tautological.  AA builds its single-brand market around the allegation that certain travel agencies are exclusive to Travelport.  Thus, to analyze substantial foreclosure based on the single-brand market is to ask "what percentage of travel agencies exclusive to Travelport is foreclosed because the travel agencies have exclusive contracts with Travelport?"  In theory, the answer should be 100%.  The fact that AA asks this

question and arrives at only 60%, and only after significant double-counting,[1] confirms the implausibility of AA's single-brand market definition in the first instance.

AA's attempts to fabricate a higher substantial-foreclosure share by measuring foreclosure against the alleged Travelport-only submarket cannot be countenanced.  The relevant question for Count IV is whether Travelport's contracts foreclose AA Direct Connect and other competitors from a substantial share of all potential travel-agency subscribers, not whether Travelport's contracts with travel agencies that currently use Travelport foreclose a substantial share of the travel agencies that currently use Travelport.  AA's attempted gerrymandering is exactly why courts repeatedly reject antitrust claims based on single-brand markets.  The Court was correct to dismiss Count IV with prejudice and it would be futile to reverse that decision.

Dated:  February 16, 2012
/s/ Michael L. Weiner____
Michael L. Weiner
michael.weiner@dechert.com
**DECHERT LLP**
1095 Avenue of the Americas
New York, New York 10036-6797
212.698.3608
212.698.3599 (Fax)

Mike Cowie
mike.cowie@dechert.com
Craig Falls
craig.falls@dechert.com
**DECHERT LLP**
1775 I Street, NW
Washington, D.C. 20006-2401
202.261.3300
202.261.3333 (Fax)

---

[1] As discussed in Travelport's proposed surreply, even the 60% figure is overstated because it includes several large travel agencies that AA elsewhere alleges have exclusive contracts with Sabre.  (*See* Travelport Proposed Surreply [Doc. 222-1] p. 3, n. 5.)

4

        Carolyn Feeney
        carolyn.feeney@dechert.com
        Justin Pentz
        justin.pentz@dechert.com
        **DECHERT LLP**
        2929 Arch Street
        Philadelphia, PA 19104
        215.994.4000
        215.994.2222 (Fax)

        **ATTORNEYS FOR DEFENDANTS**
        **TRAVELPORT LIMITED and**
        **TRAVELPORT, LP**

*Of Counsel to Travelport Defendants:*

Walker C. Friedman
State Bar No. 07472500
wcf@fsclaw.com
Christian D. Tucker
State Bar No. 00795690
tucker@fsclaw.com
**FRIEDMAN, SUDER & COOKE, P.C.**
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
817.334.0400
817.334.0401 (Fax)

John T. Schriver
JTSchriver@duanemorris.com
Paul E. Chronis
pechronis@duanemorris.com
**DUANE MORRIS LLP**
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603-3433
312.499.6700
312.499.6701 (Fax)

Faith E. Gay
faithgay@quinnemanuel.com
Steig D. Olson
steigolson@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
212.849.7000
212.849.7100 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of February, 2012, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, Fort Worth Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Craig G. Falls*
*Craig G. Falls*