IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-244-Y |
| | § | |
| TRAVELPORT LIMITED, et al. | § | |

ORDER GRANTING MOTION TO DISMISS

Before the Court is the Motion to Dismiss (doc. 235) filed by counterclaim-defendant American Airlines, Inc. ("American"). By the motion, American seeks dismissal of the counterclaims asserted by counterclaim-plaintiffs Travelport Limited and Travelport, LP (collectively, "Travelport"). After review, the Court concludes that Travelport has not alleged facts sufficient to establish antitrust standing. Therefore, the Court will grant the motion.

I.  Background

Travelport is the owner of three global distribution systems ("GDSes"), which operate using the trademarks Galileo, Apollo, and Worldspan. "[A] GDS is a sophisticated computerized reservation system ('CRS') that facilitates the efficient aggregation and distribution of [airline] travel inventory to travel agencies and their customers." (Travelport's Counterclaims 33, ¶ 16.) GDSes obtain "travel-related content, including real-time information about [flight] schedules, fares, and availability, from travel suppliers like [American], and distribute[] that content

electronically to travel agencies, which can search for and compare various itinerary and pricing options across multiple travel suppliers . . . and also book tickets through the GDS[es]." (*Id.*)

Travelport alleges that "by bringing together in one place fares and other travel information from competing airlines, GDSs promote[] competition, including price competition, among airlines." (*Id.* at ¶ 24.) In addition, alleges Travelport, GDSes "promote[] the entry of new carriers and the expansion of smaller carriers serving a route by bringing their offerings to the attention of travelers." (*Id.*)

American is a large airline that supplies air travel both domestically and internationally.  According to Travelport, on certain city-to-city routes, American has monopoly power. Travelport alleges, for example, that American controls over 70% of the market for non-stop air travel between New York City and Dallas/Fort Worth and 100% of the market for non-stop air travel between Dallas/Fort Worth and Tokyo, Japan. Travelport identifies all of these American-dominated city pairs in Exhibit A to its counterclaims ("AA Dominant City Pairs"). (*Id.* Ex. A.) Similarly, in Exhibit B, Travelport lists a number of city pairs in which

American is nearly dominant ("AA Near-Dominant City Pairs").[1] (*Id.* Ex. B.)

Despite its market position, alleges Travelport, American is "an inefficient competitor with the highest cost structure of any major U.S. airline." (*Id.* at 38, ¶ 35.) According to Travelport, American incurs "[h]igh fuel prices . . . because [its] planes are generally older and less fuel-efficient than those of its major competitors," and American's "labor costs are the highest in the industry." (*Id.* ¶ 36.) Travelport alleges further that American "was the only major U.S. airline to report an earnings loss in the first and second quarters of 2011" and "the only major U.S. airline that did not turn a profit in 2010." (*Id.*)

Because of these difficulties, contends Travelport, American is not able to compete with other airlines on the merits (e.g., by offering lower prices). Instead, alleges Travelport, American has "devised and begun to implement an unlawful and anticompetitive scheme to solve what it sees as the 'problem' of price transparency" brought about by the GDS model. (*Id.* at 39, ¶ 37.) According to Travelport, American is seeking to eliminate Travelport and other GDSes with its "AA Direct Connect," a method by which American can bypass GDSes and provide booking services for

---

[1] Travelport alleges that "[t]here are no reasonable substitutes for air travel between two cities (for example, travel from Boston to Miami is not a substitute for travel from Chicago to Dallas)." (Counterclaims 64, ¶ 115.) In addition, "even as between two cities, direct service is a different market than connecting service, as travelers will pay significantly more for direct service." (*Id.*)

3

its flights directly to travel agents. More specifically, Travelport contends, American "is withholding or threatening to withhold content from efficient, multi-airline GDSs, and leveraging the value of its content as one of the world's largest airlines, to force travel agencies to switch to [American's] inferior, single-airline AA Direct Connect." (Travelport's Resp. Br. 1 (internal quotation marks omitted).) According to Travelport, American "is refusing to deal with travel agencies unless they agree to abandon Travelport and other GDSs" in favor of AA Direct Connect. (Counterclaims 53, ¶ 75.) Further, Travelport alleges that American is conditioning travel agencies' access to its full array of fare and flight information on their willingness to use AA Direct Connect. (*Id.* at ¶ 81.) And because AA Direct Connect "does not have the ability to perform many of the functions that GDSs perform for travel agencies," AA plans to "free-ride" the GDSes by having travel agents use the GDSes for such tasks. (*Id.* at 46, ¶ 57.)

Moreover, Travelport alleges that "[i]n addition to using AA Direct Connect to prevent travelers from efficiently comparing [American's] fares with those of competing airlines, [American] plans to fragment distribution of its own content . . ., intending that the resulting lack of transparency will result in business travel sales flowing through higher fare classes." (Travelport's Response Br. 1.) American, alleges Travelport, is "focused on

manipulating content to avoid price competition, thereby generating additional revenue." (*Id.*)

Based on these allegations, Travelport asserts counterclaims for (1) monopolization of non-stop passenger air travel between the AA Dominant City Pairs in violation of section 2 of the Sherman Antitrust Act and (2) attempted monopolization of non-stop passenger air travel between the AA Near-Dominant City Pairs in violation of section 2.  By the instant motion, American seeks dismissal of Travelport's counterclaims under Federal Rule of Civil Procedure 12(b)(6).

II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint or counterclaim that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating whether a plausible claim for relief has been stated, the Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (applying Rule 12(b)(6) standard to antitrust counterclaim).

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  Indeed, the plaintiff

5

must plead "enough facts to state a claim to relief that is plausible on its face," and his "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 555 (2007) (citations omitted). The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

III. Analysis

American contends that Travelport has not alleged "(1) facts that plausibly support the conclusion that American engaged in exclusionary conduct that violates Section 2 of the Sherman Act or (2) that Travelport has suffered any harm that would give it standing under the antitrust laws." (Pl.'s Mot. to Dismiss 1.) Concerning the latter, the Court notes that evaluating standing under the antitrust laws is a three-step inquiry. *See Doctor's Hosp. of Jefferson, Inc. v. Se. Med. Alliance, Inc.*, 123 F.3d 301, 305 (5th Cir. 1997). First, the plaintiff must allege "injury-in-fact, an injury to the plaintiff proximately caused by the

defendants' conduct." *Id.* (citing *McCormack v. Nat'l Collegiate Athletic Ass'n*, 845 F.2d 1338, 1341 (5th Cir. 1988)). Second, the plaintiff must allege "'antitrust injury,' that is, 'injury of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'" *Norris v. Hearst Trust*, 500 F.3d 454, 465 (5th Cir. 2007) (quoting *McCormack*, 845 F.2d at 1341). Third, the plaintiff must allege "proper plaintiff status, which assures that other parties are not better situated to bring suit." *Doctor's Hosp.*, 123 F.3d at 305 (citing *McCormack*, 845 F.2d 1338 at 1341).[2]

The Court will assume for purposes of this motion that Travelport has sufficiently alleged injury-in-fact. It does, after all, appear from Travelport's allegations, if true, that it has suffered and will continue to suffer harm to its "business or property" as a result of American's alleged actions. Whether Travelport has established antitrust injury, however, is less obvious.

As an initial matter, the Court notes that the relevant markets, according to Travelport, are "[t]he provision of non-stop passenger air travel" between the AA Dominant City Pairs and the AA

---

[2] "These requirements are somewhat relaxed for plaintiffs seeking injunctive relief under Section 16 of the Clayton Act. The injury alleged is not limited to business or property; damages can be simply threatened; and fear of duplicative or speculative recovery will not preclude relief." *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 319 n.10 (5th Cir. 2009) (citing 15 U.S.C.A. § 26 (West 2012)).

Near-Dominant City Pairs. (Counterclaims 64, ¶ 114; 67, ¶ 124.) These are the markets in which American allegedly has monopoly power and in which trade is being restrained. The competitors in these markets are airlines, and the consumers are travel agents and passengers. Travelport is neither.

In addition, the harm that flows from American's alleged actions, including its fragmenting flight and fare information, is in the nature of increased ticket prices and decreased price competition, a harm suffered primarily by travel agents and passengers. Another significant harm is that American is allowed to strengthen and create barriers of entry, thereby maintaining its monopoly power in the AA Dominant City Pairs and increasing its power in the AA Near Dominant City Pairs. This harm is incurred most directly by other airlines seeking to provide non-stop passenger air travel in the AA Dominant and Near-Dominant City Pairs. The nature of Travelport's alleged injuries, by contrast, are more indirect.

In the Court's view, because Travelport is neither a consumer nor a competitor in the market for the provision of non-stop air travel between the AA Dominant and Near-Dominant City Pairs, and given that Travelport's injuries do not flow directly from the anticompetitive aspects of American's alleged actions, Travelport has not suffered antitrust injury and therefore lacks standing. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council*

*of Carpenters*, 459 U.S. 519, 538-39 (1983); *see also Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) ("[I]njury, although causally related to an antitrust violation, nevertheless will not qualify as 'antitrust injury' unless it is attributable to an anti-competitive aspect of the practice under scrutiny . . . ."); *Norris v. Hearst Trust*, 500 F.3d 454, 466 (5th Cir. 2007) ("Plaintiffs are neither consumers (buyers of advertising, or users of advertising such as subscribers) nor competitors (sellers of advertising) in the relevant market. Plaintiffs have not suffered antitrust injury."); *Bell v. Dow Chemical Co.*, 847 F.2d 1179, 1183 (5th Cir. 1988) (noting that factors to consider in evaluating antitrust injury include "the nature of plaintiff's alleged injury" and "the directness of the injury").

That American is integrating vertically by implementing AA Direct Connect does not compel a different conclusion. *See Norris*, 500 F.3d at 468 ("[A]ntitrust standing is not achieved by the bare allegation, untied to anything else, that [defendant] has integrated vertically into the distribution of its paper in the relevant market and has become a competitor of its distributors." (internal quotation marks omitted)). Nor is the Court's conclusion altered by Travelport's contention that American intended to harm Travelport and other GDSes. *See Blue Shield of Va. v. McCready*, 457 U.S. 465, 537 (1982) ("The availability of the § 4 remedy to

9

some person who claims its benefit is not a question of the specific intent of the conspirators."); *McCormack*, 845 F.2d at 1342 ("[A] plaintiff does not have standing to sue for damages simply because he is injured by an antitrust conspiracy aimed at him.").[3]

IV. Conclusion

Based on the foregoing, the Court concludes that Travelport has not established antitrust standing to assert its counterclaims against American.  The Court therefore GRANTS American's motion to dismiss.  And because the Court has rejected Travelport's legal theories concerning antitrust injury, granting leave to amend would prove futile.  The Court thus DISMISSES WITH PREJUDICE Travelport's counterclaims for monopolization and conspiracy-to-monopolize.

SIGNED August 16, 2012.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[3] In light of the Court's conclusion, the Court need not address American's remaining arguments.